THE STATE v. FRANCE, *Appellant.*

1. **Juror**: MALE CITIZEN. A person summoned as a juror had been living in the county about two months, having come thither from another state, with the intention of making it his permanent home; *Held*, that under a statute which required every juror to be "a male citizen of the State and a resident of the county," he was qualified to serve.

2. **Homicide**: WIFE'S INFIDELITY. To reduce a homicide to manslaughter on the ground of illicit intercourse between the deceased and the wife of the defendant, the detection must have been in the very act, and the killing instant upon the detection.

*Appeal from St. Clair Circuit Court.*—HON. J. D. PARKINSON, Judge.

AFFIRMED.

*D. H. McIntyre,* Attorney General, for the State.

NORTON, J.—The defendant was indicted in the circuit court of St. Clair county for murder in the first degree, at its March term, 1878, for killing William Dickey. He

was put upon his trial at the March term, 1880, of said court, and was convicted of murder in the second degree, and his punishment assessed at forty years' imprisonment in the penitentiary, from which judgment he has appealed to this court. As counsel for defendant have not filed a brief in this cause, we are left to an examination of the record for the discovery of reversible error, and upon such examination we find among other things an objection that the indictment does not charge either that the killing was done willfully, deliberately, premeditatedly and with malice aforethought, or that it was done in St. Clair county.

This objection is without foundation, as the indictment, after setting out the assault with a shot-gun by discharging the same in and upon the body of deceased, distinctly avers that the said F. J. France him the said William Dickey in the manner and by the means aforesaid, willfully, feloniously, deliberately, premeditatedly, of his malice aforethought, did kill and murder. After alleging that the assault and wounding was done in St. Clair county, it is averred that of " said three mortal wounds the said William Dickey did languish, and there and then, on the 2nd day of January, 1878, within the county and State aforesaid, by reason of said wounds, did die."

An objection was also made to W. B. Fortune and John V. Burgess, who had been summoned as petit jurors, on the ground that they had not resided in the State and county one year. Upon the *voir dire* examination of these persons touching their qualifications as jurors, it appeared that one of them had lived in the State and county of St. Clair about two months, and the other about five months, and that both of them had settled there with the intention of making their permanent homes in the county and State. This was all that is required by section 2777, Revised Statutes, which provides " that every juror, grand or petit, shall be a male citizen of the State and resident of the

county, sober and intelligent, of good reputation, over twenty-one years of age, and otherwise qualified."

No exception was taken by defendant, either to the reception or rejection of evidence, and it will only, therefore, be referred to for the purpose of determining whether or not the court erred in giving and refusing instructions.

The evidence tends to show that the homicide was committed under the following circumstances: Deceased had been living for some weeks at defendant's house and with his family; that defendant became suspicious that improper intimacy was existing between deceased and defendant's wife, and defendant, who testifies in his own behalf, stated in his evidence that on the morning of the tragedy, to satisfy himself of the guilt of his wife, he requested her to accompany him to his Aunt Polly Rickman's, who lived about one-fourth of a mile distant; that they started, and while on the way he charged her with infidelity, which she at first denied, but finally admitted that on Saturday, two days previous, she had illicit intercourse with deceased. As to what occurred after they arrived at Mrs. Rickman's, defendant testified as follows: "I charged her guilt to Aunt Polly; I made some statement; I don't remember the language. She declared her innocence except as to the Saturday previous. She might have said Saturday at one time and Friday at another. After her confession I was satisfied. I wanted them to know it, that there was something in it. I wanted them to know why I would not live with her. I was in Rickman's house a short time; then I went back to my house; went in; passed into the kitchen; took my coat off. Dickey was sitting down on east of fire-place in main room, reading. I got a plumb-bob and went into the main room. I walked up behind Dickey and took him by the hair with my left hand and struck him with my right. I held the plumb-bob in my right hand with the strap wrapped around my wrist.

When I struck he jumped up, and broke loose as I struck him again; then the bob flew off the strap. I don't remember what I said; suppose I told him why I struck him. We grappled. I then threw him down; he threw me off and sprang for the gun, and I took it away from him; he ran and I shot him. I don't remember that he pulled the door shut after him. I stepped out and fired; put gun up in the rack and went down to Rickman's.    *    *
I know that I was calm—as calm as the dead sea—when I shot him. By this I mean I was not boisterous." Other evidence showed that soon after deceased was shot he was found lying on the ground in defendant's yard, and when asked who shot him, he said defendant first struck him with a rock, that he then ran and defendant shot him.

Upon this state of facts the court instructed the jury as to murder in the first and second degrees, in which the words willful, deliberate, premeditated and malice are properly defined. The court also gave the following instructions, which are excepted to:

5. Should the jury believe from the evidence that the defendant killed the deceased because of his knowledge or suspicion of deceased and defendant's wife having had illicit intercourse, and that he committed the act of killing willfully, deliberately, premeditatedly and maliciously, they should find him guilty of murder in the first degree; but if they should believe that the act of killing was without deliberation as above defined, they will find the defendant guilty of murder in the second degree.

6. Where a man finds his wife in the act of adultery and at that moment kills the adulterer, then the law, though not justifying the killing, lessens the offense to manslaughter, because the character of the injury is such as the law presumes to excite that passion in the mind of the slayer which precludes premeditation or malice; but when the wife has been discovered in the actual act of adultery and the killing follows immediately upon the discovery of the

wife and adulterer in the act, the law will reduce the of-- fense, on the ground of passion, to manslaughter.

7. Even though the jury should believe that the defendant's wife on the morning of January 2nd, 1878, con-- fessed to him that she had had sexual intercourse two or three days before with Dickey, and that defendant afterward killed Dickey because of anger or revenge engendered in defendant's mind against Dickey by reason of such confession having been made to him by his wife, yet they will not, from this fact alone, acquit the defendant, but can take it in consideration only for the purpose of determining the existence of deliberation on the part of defendant at the time he killed Dickey, that is, to determine whether defendant's mind, after such confession and before the killing, was in such a cool state and condition as to form a conscious design or purpose to kill Dickey; and if at the time defendant killed Dickey he was in a cool state of the blood and did not kill him in a heat of passion the instant the design to kill was conceived, but killed him, though only an instant after he had formed in his mind a conscious design and fixed purpose to kill, then such killing was deliberate.

The principles of law announced in these instructions have been sanctioned by this court in the case of the *State v. Holme*, 54 Mo. 153. The rule governing in such cases is thus laid down by Mr. Bishop (2 Bishop Crim. Law, § 638): "If a husband finds his wife committing adultery, and provoked by the wrong, instantly takes her life or the adulterer's * * * the homicide is only manslaughter. But to entitle it to this tender consideration, the detection must be in the very act, which is supposed to so stir the blood of the injured person as to impair for the moment his reason; and if, after merely hearing of such an outrage, the wronged individual immediately takes vengeance on the other by pursuing and killing him, his offence is murder." Under the facts of this case the court

did-not err in refusing an instruction asked by the defendant as to manslaughter. The cause seems to have been fairly tried, and we find nothing in the record to warrant us in disturbing the judgment, and it is hereby affirmed. All concur.