THE STATE v. SOLOMON FOX, Appellant.

Division Two, December 23, 1918.

1. **INSTRUCTION: Peremptory: Criminal Case..** An instruction telling the jury that "the court instructs the jury as a matter of law that there is no evidence in this case showing or tending to show that defendant was justified in killing the deceased" is erroneous, where the defense is not self-defense and defendant does not testify; for it assumes that he did kill the deceased. Although upon his arrest defendant stated he killed deceased, that was not a judicial confession, but presented a question for the jury. Such an instruction takes from the jury's consideration matters urged in defense or justification.

2. ———: **Specific Assignment: Wrong Number.** If the motion for a new trial so quotes the words of the erroneous instruction given as to make it clear which instruction is referred to, the assignment is specific enough to require its review on appeal, although it designates it by a wrong number.

3. ———: **Heat of Passion: Not Necessary to Define.** If the instruction details every pertinent fact from which a heat of passion might have arisen, and then instructs the jury that such facts, if found by them, will reduce the offense to manslaughter in the fourth degree, it is not error to fail to define the words "heat of passion."

4. ———: **Adultery With Defendant's Wife.** An instruction telling the jury that if deceased was trespassing upon defendant's premises and being found by defendant in the act of adultery with his wife was shot and killed, they should find defendant not guilty, should be refused. In this case there is no evidence upon which to base such an instruction, but even if there were, if deceased was killed by defendant upon being caught in adultery with his wife, before his heat of passion aroused by the fact had time to cool, he was guilty of manslaughter in the fourth degree, and not entitled to acquittal.

Appeal from Audrain Circuit Court.—*Hon. Ernest S. Gantt*, Judge.

REVERSED AND REMANDED.

*Fry & Fry* for appellant.

(1) The giving of an instruction which employs the term of "heat of passion" and fails to define the same, is error, and works a reversal of the judgment. State v. Skaggs, 159 Mo. 581; State v. Carion, 266 Mo. 90. (2) The State's fifth instruction is clearly erroneous and highly prejudicial. There was no occasion for giving it. Here the court instructed the jury "there is no evidence in the case showing or tending to show that defendant was justified in killing the deceased." The instruction is peremptory. It took away from the jury the issue as to whether he was guilty or not guilty. If it was the purpose of the court to direct the jury that there was no "self-defense" or "justification" or "provocation," then that should have been done by proper instruction defining these terms. The court

should have at least explained or defined to the jury what it meant by "justification in killing." It in effect told the jury the defendant killed the deceased and was not justified or was guilty and had no defense. The court should not give an instruction having no application to the case. State v. Rose, 32 Mo. 246. The giving of an instruction which the jury might understand as taking from their consideration one element of the prisoner's defense, is ground for a reversal of his judgment. State v. Foley, 12 Mo. App. 431. (3) Under the evidence the court should have given defendant's first, second, third and fourth instructions, refused. The deceased was a trespasser and engaged in an unlawful act. It was a question for the jury to determine whether in protecting his home and his wife and ejecting the deceased, the defendant used ordinary caution in ejecting the deceased. It is clear from the evidence the defendant did not intend to injure the deceased and he was accidentally killed. The evidence shows the defendant saw the deceased in the coal house with his wife in the act of adultery and could have killed him, if that had been his purpose, but only shot after he came out at a distance and he shot only to frighten him and accidentally hit him. The deceased was a violator of the law and the defendant was justified in using all necessary force for the protection of his home and his wife. State v. Foley, 12 Mo. App. 431; State v. Eastham, 240 Mo. 252; Morgan v. Durfee, 69 Mo. 469; State v. Grugin, 147 Mo. 39; State v. Harper, 149 Mo. 514.

*Frank W. McAllister*, Attorney-General, *C. P. LeMire*, Assistant Attorney-General, for respondent.

(1) The peremptory instruction requested on behalf of the defendant at the close of all the evidence was properly refused. State v. Wertz, 191 Mo. 578; State v. Pollard, 174 Mo. 614; State v. Warner, 74 Mo. 85. (2) A general assignment in the motion for new trial, alleging error in giving or refusing instructions,

presents nothing for review in this court; therefore, instructions 4 and 5, given by the court, and defendant's first, second, third and fourth instructions refused by the court, are not saved for review here. State v. Snyder, 263 Mo. 668; State v. Bowen, 263 Mo. 279; State v. Douglas, 258 Mo. 290. (3) The court did not err in giving instruction No. 8. Almost identical instructions have been approved here in numerous cases. State v. Hudspeth, 159 Mo. 195; State v. Patterson, 116 Mo. 505.

FARIS, J.—Defendant was charged, by an information filed in the circuit court of Audrain County, with murder in the second degree, for that he had, as it was alleged, shot and killed one A. R. Critchfield. Upon trial, he was convicted of manslaughter in the fourth degree, and his punishment assessed at imprisonment in the State Penitentiary for a term of two years. From this conviction, after the usual motions, he has appealed.

The facts, as the record discloses them, are peculiarly meager. Defendant at the time of the alleged commission of the homicide was about eighty years of age. He had been married three times. His third wife, with whom he was living at the time of the homicide, was about forty or forty-five years old, and in popular reputation, upon the phase of virtue, not above suspicion. The deceased, Critchfield, was sixty-four years of age, married, but separated and living apart from his wife.

On the evening of January 16, 1917, the dead body of the deceased was found in the grounds of one of the public schools of the City of Mexico, a little over one hundred feet from the rear of the premises occupied by defendant and his wife. There were two gunshot wounds in the body of the deceased, either of which was fatal, but one of which had penetrated the heart, or the great blood-vessel which ascends from the heart, evidently producing instant death. Upon being arrested defendant confessed that he had shot and killed

deceased, but he did not relate any of the circumstances or details of such shooting and killing.

Defendant did not take the stand upon the trial and offered no testimony whatever thereon, save and except testimony touching his previous good character, which was shown to have been good. No competent evidence was offered from any source as to the motive for this homicide, though some evidence was permitted to be offered upon the trial, consisting wholly of hearsay, which seemingly throws some light upon the motive for the killing. One witness for the defendant was permitted to say that in a conversation with the wife of defendant, the latter admitted that a short time before the killing of deceased by defendant, she and deceased had been engaged in sexual intercourse in a little coal house situate at the rear of the premises occupied by defendant and his said wife. This coal house was, as forecast above, a little more than one hundred feet from the point where the body of deceased was found. There is no competent evidence in the case, however, that deceased and defendant's wife were shortly before in the act of adultery, and none of any character that defendant caught deceased and his wife engaged in sexual intercourse at or just immediately prior to the homicide, or even that he knew they had been so engaged. Upon this point there was no testimony offered and no evidence whatever, except such attenuated inference as might arise from the hearsay testimony of the fact of sexual intercourse and from the nearness of the place thereof to the point at which the body of deceased was found.

Notwithstanding this condition of the record upon this question, the court instructed the jury upon manslaughter in the fourth degree, just as if there had been competent evidence of this defense.

Such other facts as will serve to make clear the points which we find it necessary to discuss, will be set out in connection with the expression of our views thereon.

On the part of the State the court, among others, gave the below instruction, to-wit: "The court instructs the jury as a matter of law that there is no evidence in this case showing or tending to show that

Peremptory Instruction.

defendant was justified in killing the deceased, A. R. Critchfield." Defendant insists that the giving of this instruction constitutes reversible error. The learned counsel for the State concede that it was error to give this instruction, but they insist that this action of the court *nisi*, in giving this objectionable instruction, is not properly preserved in the record, in that no specific mention is made of this alleged error in the defendant's motion for a new trial.

In this contention counsel for 'the State are in error. The giving of this instruction is specifically urged as error. Defendant's motion for a new trial upon this point says: "The court erred in giving *instruction number 8,* peremptorily instructing the jury that there was no evidence to show defendant was justified in killing the deceased." (Italics ours). While the number of this instruction is *five* and not *eight,* as the assignment of error in the motion for a new trial has it, we ought not, in view of the verbal sufficiency of the assignment, to refuse to consider it on account of the mistake in setting out the number thereof, which mistake is from the context palpably a mere clerical misprision. The writer of the motion for a new trial had, in the clause thereof immediately preceding the assignment now under review, complained of an instruction numbered eight on self-defense. It is plain that coming to the assignment of error bottomed on the giving of instruction five, counsel inadvertently wrote eight, instead of five, as was intended by him. Of course, the fact of inadvertence would not save the point; it is saved only by the definite setting out of the substance of the instruction. It is clear that we are not warranted in refusing to review this assignment of error for any lack of specific averment of it in defendant's motion.

Coming to the merits of the point we are constrained to agree with the frank concession of learned counsel for the State, that the giving of this instruction was hurtful and reversible error. This is so for the reason, if for no other, that it tells the jury that defendant killed the deceased. It was for the jury to find, as one of the vital issues in the case, that deceased had been killed by defendant, and not for the court to assume this fact, or state in terms, as was done here, that defendant killed deceased. [State v. Mills, 272 Mo. 526.] Cases can be imagined wherein the statement that defendant killed the deceased, might not be fatal, as for example, where the killing is admitted and the defense relied on is self-defense. There was no such judicial admission in this case, and while there was evidence of the fact that defendant did kill the deceased, this evidence was for the jury. Ordinarily, such an instruction would be bad because it took from the jury a consideration of matters urged in defense, or justification. None such, however, are to be found in this case. In this respect the case is *sui generis*, and if the court had not in the instruction assumed as true a vital issue in the case, the Statute of Jeofails (Sec. 5115, R. S. 1909) might under the peculiar facts here have obviated a reversal, though we are convinced that an instruction of this sort has ordinarily no place in a trial upon any criminal charge.

Complaint is made that the court failed to define the technical term "heat of passion," as used in the instruction given on manslaughter in the fourth degree. While it is true that the court did not abstractly define this term, he yet set out concretely what facts would warrant such a heat of passion in defendant as would negative the existence of malice and deliberation and thereby reduce the crime from murder to manslaughter in the fourth degree. So much of the instruction on manslaughter in the fourth degree as, in our view, serves to save it as against the error urged, reads thus:

Heat of Passion.

"If from the evidence and under these instructions you find and believe that at the County of Audrain and State of Missouri, on or about the 16th day of January, 1917, or at any time within three years next before the filing of the information herein, the defendant intentionally shot with a pistol loaded with gunpowder and leaden balls said A. R. Critchfield, and thereby inflicted upon him a mortal wound whereof on or about the 16th day of January, 1917, in said County of Audrain, he died, and that at the time of such shooting and wounding of said A. R. Critchfield the defendant was so far under the influence of a passion suddenly aroused by the defendant finding his wife and said Critchfield together in defendant's coal house, or in the act of sexual intercourse on his premises where he lived as to make him incapable of thinking coolly of the natural consequences of his act, then you should convict the defendant of manslaughter in the fourth degree."

The court *nisi* might have told the jury that the term "heat of passion" as used in the instruction means a heated state of the blood which negatives the existence of both malice and deliberation and which is aroused and exists in contemplation of law whenever a homicide is committed so immediately following a lawful provocation offered by the deceased to the accused as to afford no cooling time or any sufficient opportunity for cool judgment to resume its sway over the mind of the accused. But instead of doing this, thus abstractly the learned trial judge saw fit to tell the jury, in plain words, that if they found certain named facts (which defendant contends were shown in evidence) these facts were such as to reduce the offense to manslaughter in the fourth degree. Manifestly, by this defendant had the benefit of every fact in the case, which in contemplation of law might have aroused heat of passion, and if this was an error (for that there was no evidence of the facts on which it was predicated), it was one committed in defendant's favor, for which he may not be heard to complain. If so it be that by the interpola-

276 Mo.—25

tion into the above instruction of the disjunctive "or" the jury were told that defendant had the legal right (subject only to the pains and penalties of manslaughter) to kill deceased if defendant found his wife and deceased together in the coal house, that likewise would be an error in defendant's favor for which he may not be heard to complain.

Defendant offered four instructions which were refused by the court. Obviously, this action of the court was proper. The instructions offered were all similar in trend and substance. Three of them told the jury that if they believed that deceased was trespassing on defendant's premises, and being found by defendant in the act of adultery with the defendant's wife, was shot and killed, the jury should find defendant not guilty. The fourth instruction was bottomed upon the above alleged facts and the additional theory of an accidental killing. It is enough to say that there was no proof in the record that deceased was killed while in the act of adultery with defendant's wife, or that he was caught or found by defendant in such act immediately before the shooting, or at any other time, neither was there any evidence of an accidental shooting. Moreover, these instructions all required an outright acquittal of defendant in case the jury found the facts upon which the instructions were predicated. This alone was error which warranted the refusal of three of the instructions. For if deceased was killed by defendant upon being caught in adultery with defendant's wife, before the defendant's heat of passion aroused by the fact had time to cool, he would yet be guilty of manslaughter in the fourth degree, and would not be entitled to an acquittal. [State v. Holme, 54 Mo. 153; State v. France, 76 Mo. 681; State v. Vest, 254 Mo. 458.]

For the error noted let the case be reversed and remanded. All concur.