## THE STATE v. BIRDIE BURRELL, Appellant.

### In Banc, May 22, 1923.

1. **INSTRUCTION FOR MANSLAUGHTER:** Failure to Give: No Request: Error Assigned in Motion for New Trial: Consideration on Appeal. The statute (Sec. 4025, R. S. 1919) declares that "whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; . . . and a failure to so instruct in cases of felony shall be good cause, when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial." In the trial of defendant for murder there was evidence justifying an instruction upon manslaughter; the court instructed on murder in the first and second degree, and the jury found defendant guilty of murder in the second degree. The court gave no instruction relative to manslaughter and the punishment therefor, and defendant requested no such instruction and did not except to the court's failure to instruct upon all questions of law arising in the case, but did in her motion for a new trial specifically call the court's attention to its failure to instruct on the law of manslaughter. *Held*, that the statute is mandatory, and the defendant's motion for a new trial alone sufficiently pre-

State v. Burrell.

served for consideration and review on appeal the court's failure to instruct on manslaughter, and the question whether it was error to fail to give such an instruction is entertained. [Following State v. Conway, 241 Mo. 271, and overruling State v. Lee, 288 Mo. 41, 49, and State v. Cook, 207 S. W. 831, 833.]

2. ———: ———: Required by Evidence: Self-Defense. Instructions involving self-defense and manslaughter may both be given where the facts justify them. One element of manslaughter is the killing of a human being intentionally, but in a sudden heat of passion due to adequate provocation and not with malice; and where there is substantial evidence that deceased followed defendant into her own house and struck and kicked her and threatened to cut her heart out with a pair of shears which he had suddenly seized, all just prior to the shooting, it was error to fail to instruct on manslaughter, where defendant was convicted of murder in the second degree, notwithstanding the court instructed on self-defense and such evidence tended to establish a shooting in self-defense.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

REVERSED AND REMANDED.

*S. E. Garner* for appellant.

(1) The court erred in not instructing the jury on the law of manslaughter, and the punishment therefor. The law requires the trial judge to instruct the jury in writing on all the law of the case which the evidence justifies, without a request on the part of the defendant. Sec. 4025, R. S. 1919; State v. Conley, 255 Mo. 158. (2) Since the abolition of all degrees of manslaughter, every killing of a human being is manslaughter, unless done deliberately, premeditatedly, maliciously, or under circumstances found by the jury to be justifiable or excusable. State v. Gore, 237 S. W. 993.

298 Mo.—43

*Jesse W. Barrett*, Attorney-General, and *Henry Davis*, Assistant Attorney-General, for respondent.

Where defendant's own testimony shows that he is guilty of no offense and that he killed in self-defense, and there is no evidence to the contrary except such as tends to prove him guilty of murder in the first degree, the failure of the court to give an instruction on manslaughter is not error. State v. Butler, 247 Mo. 685; State v. Foran, 255 Mo. 213; State v. Stenzel, 220 S. W. 884; State v. Allen, 234 S. W. 841.

DAVIS, C.—Having been indicted, by a grand jury, for murder in the first degree, and convicted, on July 23, 1921, of murder in the second degree, defendant has appealed from a judgment of the Circuit Court of the City of St. Louis, fixing her punishment at imprisonment in the penitentiary for a term of ten years.

The evidence for the State tended to show: That on the 12th day of July, 1921, appellant, a laundress, and Cleveland Burrell, a coal driver, as husband and wife were living at 2607½ Market Place in the city of St. Louis, and at about ten o'clock in the morning on that day were at home. Appellant was washing and hanging up clothes in the back yard, and Cleveland Burrell, the deceased, carried a bucket of water from the second floor of the building; and immediately afterwards came into the yard where appellant was hanging up clothes; appellant and deceased were, as appellant hung up the clothes, "squabbling," and cursing each other; deceased was heard to say that he was going to pack his trunk and go; appellant told him to go, that she could get plenty of men like him every day; deceased retorted, "I left you once and you begged me back;" appellant answered, "Don't start that row;" deceased said, "When I do quit you, you will be dead, and it will take all the police in St. Louis to pull me off you." During the quarrel appellant told deceased that "if he did not go on she would kill him, for she had a gun in her bosom,"

although the witness did not see a gun in appellant's bosom; afterwards, witness heard a shot and saw deceased fall out the front door onto the sidewalk with his head turned east; witness ran downstairs and turned deceased over and blood was oozing out of his mouth. Before the shooting occurred, deceased went from the yard into the kitchen, and appellant went in a short distance behind him, to-wit, ten or twelve feet; appellant and deceased had been in the kitchen at least five or eight minutes before the shot was fired. The front steps have four landings; it appeared to witness that deceased was falling from the bottom step to the sidewalk when she saw him. The deceased never made any statement; only said, "Lord have mercy." The deceased at that time was not armed; the officer came immediately and arrested appellant; the deceased was taken to City Hospital No. 2 and died in a very short time; on previous occasions witness said she heard appellant tell deceased that he, deceased, was going to make her kill him.

The State's evidence further tended to show that on the morning of the homicide at about eleven o'clock one Charles Alfud, who was at the time a roomer at the Burrell house, was returning to the house, and as he reached the front door he heard Cleveland Burrell, the deceased, say, "Put that away;" at that time the deceased was standing on the steps and appellant inside the house; he did not see a gun; the shot was immediately fired and the deceased fell; the officer of the law in the block heard the shot and arrested witness.

B. Johnson's evidence, for the State, tended to show, that when deceased went into the house from the yard where the argument was going on, appellant followed him and he saw the front of the gun in appellant's mother-hubbard; and appellant pulled it out as she followed deceased into the house; witness identified the pistol, offered in evidence, as the same pistol he saw appellant pull from her mother-hubbard; appellant shot deceased while he was standing on the steps near the front door; the deceased said, "Don't do that; put that up."

The State's evidence further tended to show that the deceased backed out of the house with his hands up, saying, "Don't do that," immediately before the shooting. That Officer Erlacher testified as follows:

"Q. What statement, if any, did the defendant make? A. I said: 'What did you want to do that for?' I said: 'What did you want to shoot him for?' and she said: 'Because he tried my temper out and I couldn't stand him any more, and he hasn't been working since February and he comes in and rubs his dirty hands on my clothes after I get them done up;' and she had some clothes lying on the table I believe."

The evidence on the part of the defendant tended to show: That the appellant was sickly and nervous; that deceased often abused and struck her; that deceased, just prior to the killing, told Dr. Brown that he had told appellant she would need a doctor or an undertaker; the deceased had choked appellant recently prior to the killing, so that she was treated by Dr. Brown; that the appellant bears a good reputation in the community for peaceableness and quietness.

Appellant, testifying for herself, stated that she married deceased and took him into her home at 2609 Short Market Street, in the city of St. Louis; he had not worked since January, 1921; she washed and ironed for a living, paid the house rent and bought her own clothes; her husband would ask her for money, and would beat her when she refused to give it to him, and he constantly beat her; he beat her just two weeks prior to the killing; on the morning of the killing she was in the back yard hanging up clothes, and deceased came to her and asked her for money; she told him she did not have any, and he then jumped on her; she went into the house, where he followed, kicked her and struck her on the arm; he told her that if she could not give him money he did not want her, and would get somebody who would; she went into the next room and he followed, picked up a pair of shears and told her he would cut her damn heart out, threw the shears at her

and ran her around the bed; after she fired, he dropped the shears, backed out the door, and fell on the sidewalk; deceased struck appellant on the arm and kicked her on the leg, and the kicking, striking and threats with the shears were all done just prior to the shooting; she never pulled a gun from her bosom as she went into the house, and by reason of the way she was dressed she had no way of carrying a gun; appellant did not, at any time, tell deceased that if he did not go away, she would shoot him; appellant went back into the kitchen after the shooting and was very much excited.

Part of the evidence relied upon to justify an instruction for manslaughter is herewith set out:

"A.   He kicked me on my leg and struck me on this arm (indicating).

"Q.   What did he say to you?   A.   At the time he done that I broke and ran into the room and he ran in the door where the old shears were hanging and he came to me and said, 'I will cut your damn heart out of you' and I begged him not to do that, and he ran me around a circle this way (indicating) and I go to the end of the bed.

"Q.   And he reached and got the shears?   A.   Yes, sir.

"Q.   And as he did that what did he say?   A.   He told me he would stab them through my damn heart. He told me he would kill me with them.

"Q.   What did you do?   A.   I ran around that way for the bed when he started at me with the scissors, I grabbed the gun and shot him."

Defendant testified that she believed her life in danger, and would not have fired that shot had she not believed her life in danger or of losing her life or receiving great bodily harm.

Defendant testified on cross-examination that her home consisted of three rooms, in a row, kitchen, bedroom and front room.   The scissors were hanging in the middle room.   She was doing her washing in the house.   When deceased said he would cut her heart out,

he was in the middle room, where he had followed her. "I was in the middle room and when he struck, he said he would stab those scissors clean through me. Then I begged him not to do anything to me, and when he throwed the scissors down and fell out of the front door, then I fired. The scissors fell in the front room. He was standing in the doorway between the front room and the middle room. He was standing halfway in the front room when I begged him not to do it, and I fired." He was in the center of the front room when she fired. After she fired, he backed on out the front door and threw the scissors down.

The court instructed the jury on murder in the first and second degree, self-defense, and the usual instructions relative to the burden of proof, innocence, reasonable doubt, good character and credibility of the witness, but gave no instruction on manslaughter, of which matter alone, defendant, in her brief, complains.

I. The trial court failed to instruct the jury relative to manslaughter and the punishment therefor. Defendant neglected to request this instruction, or except to the court's action in failing to instruct the jury upon all questions of law arising in the case. The defendant, however, in her motion for a new trial, called the attention of the court, specifically, to its failure to instruct the jury on the law of manslaughter.

Instruction on Manslaughter.

On the record, we may consider the failure of the court to so instruct the jury.

The fourth clause of Section 4025, Revised Statutes 1919, reads as follows: "Fourth, whether requested or not, the court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict; which instructions shall include, whenever necessary, the subjects of good character and reasonable doubt; and a failure to so instruct in cases of felony shall be good cause,

when the defendant is found guilty, for setting aside the verdict of the jury and granting a new trial.''

In State v. Conway, 241 Mo. 271, a leading case on this statute, the court lays down the following rules relating thereto: First: That a failure by the trial court to instruct on all the law of the case, must be taken advantage of in a motion for a new trial.

This rule has been followed in numerous cases. [State v. Dockery, 243 Mo. 592; State v. Chissel, 245 Mo. l. c. 554; State v. Sykes, 248 Mo. l. c. 712; State v. Sydnor, 253 Mo. l. c. 380; State v. Horton, 247 Mo. l. c. 663; State v. Douglas, 258 Mo. l. c. 289-292; State v. Pfeifer, 267 Mo. l. c. 28-29; State v. Wansong, 271 Mo. l. c. 59. See State v. Banks, 73 Mo. l. c. 597, on instructions covering whole case.]

Second: The error assigned, in the motion for a new trial, must specify upon what point the court failed to instruct. [State v. Harris, 245 Mo. 445; State v. Snyder, 263 Mo. l. c. 668; State v. Taylor, 267 Mo. 41.]

In State v. Douglas, 258 Mo. l. c. 289, the court held the point saved, where the defendant did not, in writing or orally, request instructions, but in his motion for a new trial complained of the alleged failure of the trial court to instruct on the legal presumption of innocence and the law of reasonable doubt.

Although, in the present case, defendant failed to request the court to so instruct, she did, in her motion for a new trial, complain that the court erred in failing and neglecting to instruct the jury as to the law of manslaughter and the punishment therefor. This is sufficient, we think, under our mandatory statute, to permit us to entertain the question of error on the part of the court in failing to give an instruction on manslaughter.

The decision here reached is seemingly in conflict with State v. Cook, 207 S. W. 831, l. c. 833, and State v. Lee, 288 Mo. 41, l. c. 49. We think, however, the conclusion reached in State v. Conway, 241 Mo. 271, as sup-

ported by the concurring opinion of GRAVES, J., in State v. Swarens, 241 S. W. 934, 1. c. 940, should be sustained.

II. The defendant urges that an instruction on manslaughter should have been given to the jury. The At-

**Manslaughter: Instruction Required by Evidence.** torney-General insists that where defendant's own testimony shows that she is guilty of no offense, and that she killed in self-defense, and there is no evidence to the contrary, except such as tends to prove her guilty of murder in the first degree, the failure of the court to give an instruction on manslaughter is not error.

One degree of manslaughter is the killing of another intentionally, but in a sudden heat of passion due to adequate provocation and not with malice.

As was said in State v. Curtis, 70 Mo. 1. c. 600, where there is willful killing with malice aforethought, that is, with malice and premeditation, but not deliberation, or in a cool state of blood, the offense is murder in the second degree. Nor can any homicide be murder in the second degree unless the act causing death was committed with malice aforethought, that is, with malice and premeditation. Where there is a willful killing without deliberation and not with malice aforethought, the offense is manslaughter. [State v. Conley, 255 Mo. 1. c. 198.]

Provocation is defined in State v. Conley, as follows: "A provocation is deemed to be adequate, so as to reduce the offense from murder to manslaughter, whenever it is calculated to excite the passion beyond control. It must be of such a character as would, in the mind of an average just and reasonable man, stir resentment likely to cause violence endangering life, or as would naturally tend to disturb and obscure the reason and lead to action from passion rather than judgment, or to create anger, rage, sudden resentment or terror rendering the mind incapable of reflection." [Wharton on Homicide (3 Ed.) sec. 172.]

There is nothing in defendant's evidence to show that she provoked the quarrel. She denied any act that would put her at fault. Going into the house was within her rights, whether she followed the deceased or he followed her, for she was washing and ironing there. Exactly what happened, she alone could tell. She states that he wanted some money, and when she refused him, he struck her on the arm, kicked her on the leg and threatened to cut her heart out with a pair of shears. Whether she shot him while he maintained a threatening attitude toward her, or, having sensed danger, was trying to avoid it and withdraw, we are unable to definitely determine. The striking, kicking and threatening with the shears, were all done just prior to the shooting. The above acts, on the part of the deceased, were indignities calculated to arouse anger and passion, and produce excitement or terror. That they did so, may be a fair inference from the evidence.

As was said in State v. Ellis, 74 Mo. 207, l. c. 218, it is the state of mind produced by the lawful provocation, and not the provocation itself, which makes the killing manslaughter. This doctrine is re-stated in State v. Conley, 255 Mo. l. c. 200, the court saying: "And the passion which will reduce homicide to the grade of manslaughter is an excited state of mind produced by some lawful provocation, such as a blow, or an assault of any kind upon the person."

In State v. Banks, 73 Mo. 592, the court held that it was the duty of the lower court to consider defendant's evidence in instructing the jury as to the lower grade of homicide.

In State v. Gee, 85 Mo. 647, the court instructed the jury on both degrees of murder, manslaughter and self-defense. In this case a blow was struck; and the court held the following instruction proper: "If you shall believe, from the evidence, that the defendant shot and killed Minnick, while the defendant was in a violent passion, suddenly aroused by reason of Minnick having

shoved or struck him with his hand or fist, you cannot find him guilty of murder in either degree, for in that case the law presumes that such shooting and killing was not done of defendant's malice, but by reason of such passion.''

In State v. Bartlow, 90 Mo. 608, the defendant went to the residence of the deceased to get his wife, who was attending a wedding. While there, he was assaulted and received a blow, and thinking his life in danger, shot the deceased. It was held, inferentially at least, that instructions on self-defense and manslaughter were not inconsistent.

In State v. Wensell, 98 Mo. 137, during an altercation, the deceased struck the first blow. Defendant, after an exchange of blows, thinking his life in danger, killed deceased with a knife; held, that an instruction on manslaughter should have been given.

In State v. Hermann, 117 Mo. 1. c. 638, the court held ''that, if the defendants, while in the heat of passion, aroused by the fighting and quarreling of the deceased with friends and neighbors of defendants, threw the club and struck and killed Brown, not in a cruel or unusual manner, and without malice, and not in self-defense, they are guilty of manslaughter in the fourth degree.'' It was also stated in that case that ''manslaughter in the fourth degree, under the statutes of this State, has often been defined by this court to be the intentional killing of a human being in a heat of passion on a reasonable provecation without malice, and without premeditation, and under circumstances. that will not render the killing justifiable or excusable homicide.''

In State v. Weakley, 178 Mo. 413, the court instructed the jury on second-degree murder and self-defense, but refused to instruct on manslaughter. At page 423, the court held that ''as there was evidence tending to show that the deceased assaulted the defendant and struck him over the head with a revolver just before defendant shot him, which, if true, was certainly reasonable provo-

cation, as it must have tended to arouse that heat of passion which negatives malice, and whether it did so or not should have been submitted to the jury, and the court erred in failing to instruct on manslaughter.''

In State v. Brown, 188 Mo. l. c. 466, where the evidence tends to show that deceased struck defendant a blow with a crutch, an instruction on manslaughter was held proper.

In State v. Gordon, 191 Mo. 114, the evidence tends to show that defendant called deceased a vile name and was struck a blow by the deceased. Instructions on self-defense and manslaughter were not criticised.

In State v. Richardson, 194 Mo. 326, the court instructed the jury on first-and second-degree murder and self-defense, but failed to instruct on manslaughter. Defendant's evidence tended to show that deceased reached down and struck at him with a razor and tried to cut defendant's wife. This court directed the trial court, on remanding the cause for a new trial, to instruct on that grade of manslaughter to which such testimony applied.

In State v. Wilson, 242 Mo. 481, the court lays down the rule that manslaughter in the fourth degree is the intentional killing of a human being in a heat of passion on a reasonable provocation, without malice and without premeditation, and under circumstances which will not render the killing justifiable or excusable homicide. In that case, the evidence tends to show that the defendant, after striking the deceased with a rock, withdrew and fled, and that deceased pursued, struck plaintiff and was about to do him serious injury. The court held, that an instruction for manslaughter in the fourth degree should have been given.

In State v. Conley, 255 Mo. l. c. 199, defendant testified that the deceased assaulted him with both a knife and a pistol. The court held an instruction on manslaughter necessary.

The facts in this case distinguish it from State v. Butler, 247 Mo. 685; State v. Foran, 255 Mo. 213; State

v. Stenzel, 220 S. W. 884; State v. Allen, 234 S. W. 837; State v. Stewart, 278 Mo. 177; State v. Shuster, 183 S. W. 296; State v. Fletcher, 190 S. W. 317 and State v. Borders, 199 S. W. 180. In the above cases the facts failed to justify an instruction on manslaughter, because there was no personal violence offered defendant such as is necessary to constitute reasonable provocation; that is, there were no provocative blows to engender passion. In the case under consideration, there was evidence tending to show striking and kicking, and a threatening to cut defendant's heart out. This tended to cause passion or terror. Defendant called it excitement. Instructions involving self-defense and manslaughter may both be given where the facts justify them. We think the facts in this case justify them. Consequently, the trial court erred in failing to instruct the jury relative to manslaughter.

We, therefore, reverse the judgment, and remand the cause to be tried in accordance with these views. It is so ordered. *Higbee, C.,* concurs; *Railey, C.,* dissents for reasons stated in State v. Lee, 280 Mo. 1. c. 49-50.

PER CURIAM:—The foregoing opinion of DAVIS, C., in Division Two, is hereby adopted as the opinion of Court in Banc. *Woodson, C. J.,* and *Graves, David E. Blair* and *White, JJ.,* concur; *James T. Blair, Walker* and *Ragland, JJ.,* dissent.