**STATE of Missouri, Respondent,**

v.

**Percy Lloyd DAVIS, Appellant.**

No. 47428.

Supreme Court of Missouri,

Division No. 2.

Oct. 12, 1959.

As Modified on Court's Own Motion and Motion for Rehearing or to Transfer to Court en Banc Denied Nov. 9, 1959.

Joseph H. Glass, Kansas City, for appellant.

John M. Dalton, Atty. Gen., Grover C. Huston, Asst. Atty. Gen., James E. Conway, Asst. Atty. Gen., for respondent.

EAGER, Judge.

Upon an indictment for first-degree murder defendant was convicted by a jury of second-degree murder and the minimum punishment of ten years in the penitentiary was assessed. The jury gratuitously recommended clemency. This appeal followed in due course. The only error asserted here is the failure of the trial court to give an instruction on manslaughter as a part of the law of the case, though such was not requested. This, of course, involves a review of the evidence to see whether such an instruction was justified.

Defendant, 40 years old, was employed in Kansas City as a baker and worked generally from around midnight until early morning. He lived with his wife and her four children by a previous marriage. His wife had for some time associated with one Joe Lillard, but there is no evidence to show that defendant knew this, or that he suspected it prior to the night in question. Defendant's testimony was, in substance, as follows: On the night of September 5–6, 1958, defendant had started to leave his home for work about midnight when he heard the phone ring; he stopped and listened over a basement extension, and heard the end of a conversation in which his wife told a man that "he wasn't coming over," to which the man replied, "I will see you"; he went on to the bakery, but "got to thinking about it" and had a substitute baker called; he then drove his car to a point near his home, saw that a light was on in the house, parked, and walked to the rear of his house; he saw a man come to the front of the house; soon thereafter he stood on the first step of a ladder and saw this man and his wife in the bedroom on the bed, apparently "struggling"; he went back to his car, got his .45 caliber automatic, unlocked the front door of his house and walked through to the bedroom; there he saw the deceased, Lillard, on the bed "over my wife" and "it looked like a struggle"; from the doorway he asked the man "what he was doing in my house and in my bed," and the man "kind of raised up from one side as if to go into his hip pocket like," and defendant promptly shot him twice. Defendant immediately called the police. He further testified on cross-examination that he took the gun into the house for protection, and that if the deceased "hadn't raised up and made an attempt" he would not have shot him. Defendant's wife testified in substance (as supplemented by her signed statement to the police, read in cross-examination): that she had associated with Lillard for about a year and had engaged in illicit intercourse with him on certain occasions; that she had tried to break off the association; that on this night she told deceased not to come to the house, but that he came anyway, after she had gone to bed; that she got up and let him in to keep him from disturbing the neighbors; that he shoved her into the bedroom, took off his shirt, and was holding her down on the bed by the shoulders when her husband appeared; that the deceased "jumped up with his hand down beside him," and defendant shot; that she had told defendant nothing about her relationship with the deceased. In rebuttal, the State showed that no weapon

was found on deceased's body; it calls attention to the fact that neither defendant nor his wife referred to any "struggle on the bed" in their statements to the police.

The court instructed on first-degree murder, second-degree murder, and self-defense. In defendant's motion for new trial error was assigned "in not instructing the jury that they could find the defendant guilty of manslaughter." The State concedes that if the evidence justified an instruction on manslaughter, the court should have given it as a part of "the law of the case" and without request. See State v. Smith, Mo., 240 S.W.2d 671; State v. Wright, 352 Mo. 66, 175 S.W.2d 866; State v. Burrell, 298 Mo. 672, 252 S.W. 709; Rule 26.02(6), 42 V.A.M.S. But the State insists that the above assignment in the motion for new trial is too general to constitute a compliance with Rule 27.20 requiring specific grounds or causes to be set forth "in detail and with particularity * * *." Several cases are cited which we think are distinguishable; for instance, specific explanations would have been imperative in some of those cases in order to demonstrate why a homicide committed during a robbery (Section 559.010 RSMo 1949, V.A.M.S.) would not constitute first-degree murder as a matter of course under the statute. State v. Powell, 339 Mo. 80, 95 S.W.2d 1186; State v. Burnett, 365 Mo. 1060, 293 S.W.2d 335, certiorari denied Burnett v. State of Missouri, 352 U.S. 976, 77 S.Ct. 367, 1 L.Ed.2d 326. The assignment here is somewhat sketchy, but its meaning and intent were clear, and the evidence was not unduly complicated. The State's contention is denied.

The sole question of substance here is whether, on this evidence, defendant was entitled to an instruction on manslaughter, for which the statute (Section 559.140 RSMo 1949, V.A.M.S.) permits much lesser penalties than that imposed here. In this connection we note defendant's own testimony at the trial indicating that he shot in self-defense. In homicide cases the existence or nonexistence of malice is determinative as between second-degree murder and manslaughter (State v. Smith, Mo., 240 S.W.2d 671, 674), and the absence of malice may be found when the accused acts upon lawful provocation. Id. In State v. Porter, 357 Mo. 405, 208 S.W.2d 240, the court said at loc. cit. 243: "The character of manslaughter here, if such is involved, is the killing of another intentionally but in a sudden heat of passion due to adequate provocation and without malice. State v. Burrell, 298 Mo. 672, 252 S.W. 709, loc. cit. 711(2). The term provocation is defined in Wharton on Homicide, 3d Ed., 172, and the definition is quoted with approval in State v. Conley, 255 Mo. 185, loc. cit. 198, 164 S.W. 193, 197. The definition follows: 'A provocation is deemed to be adequate, so as to reduce the offense from murder to manslaughter, whenever it is calculated to excite the passion beyond control. It must be of such a character as would, in the mind of an average just and reasonable man, stir resentment likely to cause violence endangering life, or as would naturally tend to disturb and obscure the reason and lead to action from passion rather than judgment, or to create anger, rage, sudden resentment or terror, rendering the mind incapable of reflection.' "

In State v. Clough, 327 Mo. 700, 38 S.W.2d 36, the court said at loc. cit. 38: "Voluntary manslaughter has been defined as 'the intentional killing of a human being in a heat of passion on a reasonable provocation, without malice and without premeditation, and under circumstances which will not render the killing as justifiable or excusable homicide.' State v. Sebastian, 215 Mo. loc.cit. 80, 114 S.W. 522, loc. cit. 528; State v. Lewis, 248 Mo. 498, 154 S.W. 716. It has also been said that to constitute voluntary manslaughter the killing must be 'done either in a sudden affray or in sudden heat of

passion and upon provocation ordinarily calculated to excite the passion beyond control.' * * * It is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent, and therefore the crime is not murder, but manslaughter." (Citing cases.)

■ The question here resolves itself into two parts: (a) Was there any evidence which, by fair inference, would justify a manslaughter instruction? And, (b) did defendant's testimony of supposed self-defense preclude such an instruction?

In many cases the decisive question has been whether the homicide was committed sufficiently long after the provocation to permit defendant's passions to cool; or otherwise stated, whether there was a fair inference of a remaining "heat of passion" so as to justify the instruction. See, for holdings each way on this question: State v. Crouch, Mo., 124 S.W.2d 1185; State v. Whited, 360 Mo. 956, 231 S.W.2d 618, 621; State v. Robinson, 353 Mo. 934, 185 S.W.2d 636, 640; State v. Littlejohn, 356 Mo. 1052, 204 S.W.2d 750.

A few Missouri cases have discussed the circumstances under which the discovery of the adultery of a wife may reduce to manslaughter the degree of a homicide committed for that reason. State v. Vest, 254 Mo. 458, 162 S.W. 615; State v. Larkin, 250 Mo. 218, 157 S.W. 600, 46 L.R.A. N.S., 13; State v. Holme, 54 Mo. 153; State v. France, 76 Mo. 681; State v. Stewart, 278 Mo. 177, 212 S.W. 853; State v. Fox, 276 Mo. 378, 207 S.W. 779. The subject is also treated in 40 C.J.S. Homicide § 49, p. 914, and in 26 Am.Jur., Homicide, § 28, p. 174. An analysis of these authorities discloses the apparent rule that where a husband discovers his wife in the act of adultery and immediately kills her paramour, or her, an instruction on manslaughter is generally justified and required; this is done upon the theory and assumption that the situation was such as to arouse immediate passion, to overcome his reason, and to negative malice. But this is not true where the husband kills upon mere suspicion, though well founded, or upon receiving information of past adultery, or at a time when the passion engendered by the act has had time to cool.

The State argues here: that there was no showing of "an act of adultery," accomplished or imminent, and that the circumstances indicated otherwise, as that these parties were merely "struggling"; also, that defendant had seen his wife and the deceased through the window, took off his shoes, got his pistol, slipped in and confronted them; that these circumstances do not indicate a homicide accomplished in the heat of passion, and that defendant did not testify that he so committed the act. We think that in such circumstances a husband may act upon appearances which would "excite the passion beyond control" (Porter, supra) in the ordinary man; if he stopped to diagnose the situation in more particular detail he might often find himself in dire straits. Nor shall we draw here a fine and exact line on the time element; the acts of deceased after his first observation could not have consumed more than a very few minutes. See comments in State v. Holme, 54 Mo. 153, at loc. cit. 167: "But of that case it may well be observed, that the facts were all so recent, and so commingled together that they might all be considered as a part of the res gestae, and hence admissible because making up a part of the same transaction. In cases of that kind, where the prisoner is smarting under a provocation so recent and strong that he cannot be considered as being at the time the master of his own understanding, the offense may be reduced to manslaughter, but as a general principle for the interest and well being of society the old rule is the better one." The real question here is whether there was a fair inference that "a

heat of passion" was sufficiently aroused to overcome defendant's reason, and whether the homicide occurred "so immediately * * * as to afford no cooling time, or any sufficient opportunity for cool judgment to resume its sway over the mind of the accused." State v. Fox, 276 Mo. 378, 207 S.W. 779, 781. The circumstances actually speak more loudly of the probable existence of a heat of passion, than would the protestations of a defendant in his subsequent testimony, given after long deliberation. As said in State v. Vest, 254 Mo. 458, 162 S.W. 615, at loc. cit. 617 (quoting, and with certain qualifications): "'* * * every sort of conduct in others which commonly does in fact so excite the passions of the mass of men as practically to enthrall their reason, the law holds to be adequate cause.'" We have determined that the evidence justified a manslaughter instruction, unless defendant has waived it by his own testimony. In so holding we note that defendant is entitled to the benefit "of the most favorable inference that reasonably could be drawn from any part of the evidence introduced." State v. Taylor, Mo., 309 S.W.2d 621, 625.

We thus reach the second part of our question. In the case of State v. Porter, 357 Mo. 405, 208 S.W.2d 240, the court said, at loc. cit. 243–244: "As appears, defendant said that he shot deceased in self defense. There is a line of cases in this state holding that where one charged with murder claims that he shot in self defense that such homicide could not be the result of a sudden passion arising from just provocation, but that line of cases is no longer followed. See State v. Creighton, 330 Mo. 1176, 52 S.W. 2d 556, loc. cit. 561. It is pointed out in the Creighton case [52 S.W. loc. cit. 562] that if there is substantial evidence of lawful provocation the defendant is en-

titled to an instruction on manslaughter even though he claims self defense." In State v. Creighton, 330 Mo. 1176, 52 S. W.2d 556, there was evidence of an assault and battery upon defendant which the court held would warrant an inference of a heat of passion in defendant; the court further held: that other evidence, even defendant's own testimony that he killed the deceased in self-defense, would not and did not deprive the defendant of the most favorable inference that might be drawn from any part of the evidence; that the jury might believe or disbelieve defendant's testimony of self-defense; that it should have the right to consider all the other evidence under an appropriate instruction on manslaughter, and that the appellate court could not weigh the evidence in contravention of the jury's prerogative. To the same effect, see also: State v. Stallings, 326 Mo. 1037, 33 S.W.2d 914, 917; State v. Littlejohn, 356 Mo. 1052, 204 S.W.2d 750, 752, and by analogy, State v. Wright, Banc, 352 Mo. 66, 175 S.W.2d 866.

It seems somewhat anomalous to permit such an instruction in the face of a defendant's testimony on self-defense. This was recognized in the Creighton case, but the court said that the denial of a manslaughter instruction would mean that the law held the defendant conclusively to what he said at the trial, whereas his testimony is merely like that of any other witness, and that he has the right to avail himself of other favorable inferences. We decline, at this time, to overrule the lines of cases which have thus established the rule. Consequently, we hold that an instruction submitting manslaughter should have been given.

The judgment is reversed and the cause remanded.

All concur.