**STATE of Missouri, Respondent,**

v.

**Lonnie Merriam WYRICK, Appellant.**

**No. 51508.**

Supreme Court of Missouri,
Division No. 1.

Feb. 14, 1966.

**12**

Norman H. Anderson, Atty. Gen., Howard L. McFadden, Asst. Atty. Gen., Jefferson City, for respondent.

Max A. Patten, Joplin, for appellant.

HIGGINS, Commissioner.

■ Lonnie Merriam Wyrick, alias Lottie Wyrick, under information charging murder in the first degree of Opal Wyrick, was convicted of murder, second degree, and the jury fixed his punishment at 20-years' imprisonment. Section 559.030, V.A.M.S. Appellant has not filed a brief, in which case we review assignments of error preserved in the motion for new trial. State v. Kukovich, Mo., 380 S.W.2d 324, 325 [1].

On August 5, 1964, Daisey Wyrick, an aunt of defendant, lived at 809 Indiana, Joplin, Jasper County, Missouri. Her home was pictured by several exhibits and described as one large living-dining-bedroom-kitchen room with a screened porch at the rear which was furnished with a divan. Mrs. Wyrick used a portion of the house near the front door as her bedroom and she could see callers at the front door from a window in that area. The middle portion contained a round dining table.

Opal Wyrick was defendant's wife and she had been living with her husband's aunt for a little over two weeks after leaving and suing him for divorce in Oklahoma.

At about 5 P.M., August 5, 1964, Daisey Wyrick was ill. She had been taken to the hospital by a Mr. Everett Arnold the previous evening. Mr. Arnold was a friend ("He keeps me in my wood and my coal and things like that.") and he came to see how she was on the 5th. He and Opal Wyrick were drinking coffee on the back porch when Daisey Wyrick looked out the window from her bed and saw defendant come to the front door. He had come from Oklahoma with a sister, Hester, her son, and a friend, Charles Bresee. According to her, she said, " 'Lot, don't come in.' * * * He tore down the

door and come in anyway. * * * Lot chased her (Opal) around the house—around the big table and tore her waist off from her. * * * I run out to holler for help." According to her, Opal Wyrick was fully dressed in bra, underpants, knee-length shorts, and a waist or blouse.

Mr. Arnold also saw Lot chase his wife around the table and "the next time I seen them, he had her under the table choking her. * * * Charlie Bresee and his sister, Lot's sister, pulled him off of her." He next saw Lot and Opal go to the back porch at which time "he struck at me and missed me and he said, 'I'll kill you, too.' * * * He said that to me and they was still setting there on the divan, and his sister, Lot's sister and the Bresee boy went out the front door and I went out right behind them." Opal was still alive at this time.

David Carlton, a police officer, responded to a call for help. He testified: "* * * I went up on the front porch and noticed that the screen door was tore, as I looked through I seen a man coming from the back room into the living room and I went through the front door and we met in the middle of the room and the man stated that she was dead; that he killed her. I walked to the door to the rear of the room and there is a little porch like there and I observed a lady lying there." He identified the man who spoke as the defendant and the deceased as Opal Wyrick.

Raymond Service, a neighbor, was outside his home when Daisey came out "hollering for somebody to call the police." He saw the defendant on the back porch after all the others except Opal were gone. His sister, Catherine Service, was also attracted to the incidents at her neighbor's house. She also saw defendant on the back porch after everyone except Opal was gone, and " * * * (it) looked like that he just had his hands like that (indicating) and his muscles was strained like—his hands was close together and he just shoved down like that * * *."

Dr. Victor Carnes, pathologist, gave his opinion that Opal Wyrick died from strangulation.

Upon invitation to tell what happened, defendant testified: "Drove up in front of the house and I clumb out of the car and walked up on the porch and looked through the screen door and Arn was on top of my wife on the porch, on the back porch and I jerked the door, and I went in and when I got inside, all of us, we all went to fighting. Scuffling on the back porch. And when we all got through, I don't remember what happened and when I come to, my wife was a-laying there and I was rubbing her and trying to get her to and I never did get her to." Defendant denied any intention to kill his wife and explained his testimony to mean that he saw Arnold and his wife engaged in sexual intercourse on the divan on the back porch. He maintained that his wife had one leg out of her clothes at the time of the "fight." Her clothes were not torn and he put them on properly "as I come to myself." The undertaker, Harvey Arnce, stated that the blouse and brassiere were torn, and that all of Opal Wyrick's garments were clean and unsoiled. Everett Arnold denied having sexual intercourse with Opal Wyrick; and Adrian Meacham, police chief, referring to a picture of the couch and back porch, testified that "we had a person standing at this position where this couch is shown sitting at the time * * *. A person stood there yesterday (February 16, 1965) and I observed through the front porch from all angles and I could not see the person who was standing at the point where this couch was sitting in this picture."

■ Appellant's first assignment that the verdict is "against the law and the evidence under the instructions," is insufficient for any purpose. State v. Ivory, Mo., 327 S.W. 2d 870, 871 [1].

■ The second assignment charges that "the court erred in permitting Police Chief, Adrian Meacham, to testify as to the condition of the premises on February 16, 1965,

a considerable period of time after the alleged occurrences in August of 1964, * * and the court should have sustained the objections of the defendant and not to have permitted said Adrian Meacham to testify to anything that he saw on February 16th, 1965, but the said court, over the objections of said counsel, did permit the said evidence to go in * * *." This assignment is without merit because it is not supported by the record which shows that the only objection made by defendant during the testimony of Adrian Meacham was sustained. In reference to Exhibit 4 the witness was asked, "Would you have an *opinion* as to whether or not a person looking in the front door of that house could see anyone on the couch?

"MR. PATTEN: Now, if the Court please, I object to that. The couch wasn't there. He doesn't know where it was positioned. There is no one has it positioned and he couldn't have any *opinion* from having seen the scene.

"THE COURT: Well, I think *the objection would be good as to his opinion*, I will permit him to testify as to whether he could see the place on the back porch where the picture shows the couch is on that picture."

▌ The next assignment relates to Instruction No. 3: "* * * that where a man finds his wife in the act of sexual intercourse with another man, and at the moment he kills his wife, or her paramour, the law, though not justifying the killing, mitigates the offense to manslaughter, because the character of the act is such as the law presumes to excite that passion in the mind of the slayer which precludes the idea of premeditation or malice. But it is only where the wife has been discovered in the actual act of sexual intercourse, that the law grants mitigation on the ground of passion." Appellant contends that the instruction is erroneous because it requires a finding that the slayer discovered his wife "actually in the act of sexual intercourse, when in fact the instruction should have said, or given him the benefit that he had discovered his wife in a very compromising position, which

would lead him to believe that she was in the act of actual sexual intercourse * * *." This assignment is also without merit. In State v. France, 76 Mo. 681, the accused killed his wife's adulterer and an instruction authorized mitigation "when the wife has been discovered in the actual act of adultery and the killing follows immediately upon the discovery." We said, l. c. 685: "The rule governing such cases is * * * 'If a husband finds his wife committing adultery, and provoked by the wrong, instantly takes her life or the adulterer's * * * the homicide is only manslaughter. But to entitle it to this tender consideration, the detection must be in the very act, which is supposed to so stir the blood of the injured person as to impair for the moment his reason; * * *.'" See also State v. Vest, 254 Mo. 458, 162 S.W. 615, 617 [1, 2]; State v. Holme, 54 Mo. 153, 164, 165; State v. Davis, Mo., 328 S.W.2d 706, 709 [4]. The instruction was proper under the evidence here because all the testimony on the issue went to whether the deceased and Arnold were engaged in sexual intercourse, appellant testifying that he did so see them, state's witnesses denying that any such act took place.

▌ Finally, appellant contends that it was error to instruct on second degree murder "because all the evidence showed that the defendant, in killing Opal Wyrick, acted without malice and in the heat of passion." In State v. Holme, supra, 54 Mo. l. c. 164, we said: "No man can be allowed to take a human life upon a mere suspicion of personal injury, and, if he does intentionally do so under such circumstances, he will be guilty of murder * * *." The strangulation of Opal Wyrick was the product of a brutal assault, and such an assault, when it results in death is sufficient to justify a submission of murder in the second degree, State v. Clark, Mo., 111 S.W.2d 101, 102 [2], and we have already held that the jury was instructed properly as to those matters which would negative malice to reduce appellant's crime to manslaughter. State v. Davis, supra; State v. Williams, Mo., 323 S.W.2d 811, 813 [9]; State v. Taylor, Mo., 309 S.W.

2d 621, 624 [5–10]. The assignment is denied.

We have also examined those matters for which no assignment of error is required. Rules 28.02 and 28.08, V.A.M.R. The information is sufficient and in proper form; defendant waived formal arraignment and he pleaded not guilty; the verdict is in proper form, is responsive to the issues, and the punishment is within legal limits; defendant's motion for new trial was considered and allocution was granted.

Defendant had the benefit of counsel throughout his trial, in preparation of his motion for new trial, upon allocution, and through preparation and approval of the transcript on appeal.

The judgment is affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.