# THE STATE v. EVERETT SWEARENGIN, . Appellant.

### Division Two, December 6, 1916.

1. **INFORMATION: Surplus Preposition.** The use in four different places of the preposition "of" in an information charging that the assault was done of defendant's "malice of aforethought,". is non-hurtful surplusage, but should be avoided, and the information may be amended by striking it out.

2. **MURDER: Instruction: Self-Defense: Necessary to Kill.** An instruction on self-defense in a murder case which tells the jury that "if defendant had reasonable cause to believe and did believe that it was necessary for him to shoot and kill to protect himself from such apprehended danger, you will acquit on the ground of self-defense," is not because of the use of the word "kill" reversible error; and in the absence of any evidence contradicting defendant's intent to kill and in view of the fact that he did shoot deceased in a vital spot and kill him, complaint of the word "kill" as used in the instruction is more specious than real.

3. **OBJECTIONS TO EVIDENCE: Failure to Rule.** If the objection made to the admission of evidence was not sufficient to make a ruling thereon necessary, the trial court cannot be convicted of error for failing and neglecting to rule upon it.

4. **CROSS-EXAMINATION OF DEFENDANT: Matters Not Referred to in Chief.** Defendant cannot in cross-examination be questioned about matters to which he did not refer in his direct examination. He cannot on cross-examination be asked if he did not discharge his pistol on the public road three hours before shooting or seeing deceased, where he had not in testifying for himself referred to the matter.

5. **DISCONNECTED ALTERCATION.** Testimony offered by the State tending to show that three hours prior to the shooting defendant had an altercation with a girl, which was a difficulty entirely disconnected and separate from the homicide, should not be admitted.

6. **INSTRUCTION: Presumption for Second Degree Murder.** An instruction telling the jury that "if they find from the evidence that defendant intentionally killed" deceased "by shooting him with a loaded pistol and that such pistol was a deadly weapon, then the law presumes the killing was murder in the second degree, in the absence of proof to the contrary; and it devolves upon the defendant to adduce evidence to meet or repel that presumption,

269 Mo.—12

unless it is met or repelled by evidence introduced by the State," has no place in a case wherein all the circumstances of the homicide are known and shown by the testimony of eye-witnesses, and is error. Presumptions are invoked only when evidence is lacking, and are not to be used, in the face of the fact presumed, to batter down evidence. [Criticising, but distinguishing, State v. Minor, 193 Mo. 1. c. 612.]

7. ———: ———: **Undue Burden Upon Defendant.** To make use of the presumption that the intentional killing of another by a deadly weapon is second degree murder, in a case in which all the facts are shown by eye-witnesses, is to assume the absolute truth of the State's side of hotly disputed facts, and to demand that defendant · rebut the presumption so unwarrantably drawn is to put on him an undue burden, and to beg the identical question submitted to the jury upon the proven facts.

Appeal from Douglas Circuit Court.—*Hon. John T. Moore*, Judge.

REVERSED AND REMANDED.

*Fred Stewart* and *G. Purd Hays* for appellant.

(1) The court erred in refusing to quash the information, as the same is vague, indefinite, does not intelligently inform the defendant of the nature of the charge against him, is not properly verified and charges no offense under the laws of Missouri. The phrase, "On purpose, and of his malice of aforethought," is not known to the law. State v. Bonner, 178 Mo. 424; State v. Schnettler, 181 Mo. 173; State v. Meysenberg, 171 Mo. 1; State v. Keating, 202 Mo. 197. (2) The court erred in refusing to rule on the objections made by the defendant to the prejudice of the defendant. When called upon to pass on the rejection or admission of evidence it was the court's duty to rule. Morrison v. Turnbaugh, 192 Mo. 427; State v. Rothschild, 68 Mo. 52; State v. Conway, 241 Mo. 271; Seafield v. Bohme, 169 Mo. 546. (3) The court committed reversible error in permitting D. H. Narramore to testify about a fight or difficulty between defendant and Sarah Fitzgerald an hour or more before the fight between the defendant and

Samuel O. Narramore, the deceased. It was a matter or difficulty not in any way connected with the defendant and deceased and could only prejudice the jury against the defendant. State v. Conway, 241 Mo. 271; State v. Clayton, 100 Mo. 615; State v. Parker, 96 Mo. 382. (4) The court committed reversible error in compelling the defendant to testify, over the objection of the defendant, to things not testified to in his examination in chief, things that happened away from the presence and hearing of the deceased, Samuel O. Narramore, and could not in any way shed any light on the killing or any issue in the case, and was prejudicial to the defendant. State v. McGraw, 74 Mo. 573; State v. Hawthorn, 166 Mo. 229; State v. Porter, 75 Mo. 171; R. S. 1909, sec. 5242; State v. Fullerton, 90 Mo. App. 411; State v. Chamberlain, 98 Mo. 129. (5) The court committed reversible error in giving instruction number 1, as said instruction told the jury it devolved upon the defendant to prove he was not guilty of murder in the second degree. It devolved upon the State to prove the defendant guilty beyond a reasonable doubt. State v. Helton, 234 Mo. 559; State v. Gentz, 184 Mo. 223; State v. Stubblefield, 239 Mo. 526.

*John T. Barker,* Attorney-General, and *Kenneth C. Sears* for the State.

(1) The information in this case is sufficient to sustain the judgment. Kelly's Criminal Law & Procedure (3 Ed.), sec. 474; State v. Banks, 118 Mo. 123; State v. Gregory, 178 Mo. 56; State v. Barker, 216 Mo. 543. (a) The word "of" before the word "aforethought" can be stricken out and a perfect information will be left. State v. Myers, 99 Mo. 114; State v. Miller, 156 Mo. 84. (b) The Statute of Jeofails cures an immaterial error. State v. Shelton, 223 Mo. 128. (2) The testimony as to the Fitzgerald affair was entirely proper as one of the circumstances leading up to the homicide. 1 Wigmore on Evidence, secs. 218, 365, 396; 5 *Ibid.,* sec. 396; State v. Kennade, 121 Mo. 405;

State v. Dettmer, 124 Mo. 426; State v. Hoffman, 78 Mo. 257; State v. Crawford, 115 Mo. 620; State v. Raper, 141 Mo. 327; State v. Nelson, 166 Mo. 191. (3) The cross-examination of the defendant does not constitute reversible error. State v. Avery, 113 Mo. 475; State v. Lewis, 118 Mo. 86; State v. Barrington, 198 Mo. 71; State v. Foley, 247 Mo. 635. Instruction number 1 has been approved by the later decisions of this court. State v. Evans, 124 Mo. 411; State v. Minor, 193 Mo. 597.

FARIS, P. J.—Defendant was tried in the circuit court of Douglas County upon an information charging murder in the first degree, for that, as it was averred, he had shot and killed one Samuel O. Narramore. Having been found guilty by the jury of murder in the second degree, and his punishment assessed at imprisonment in the penitentiary for a term of ten years, he has, after the usual motions, appealed.

Such of the facts as may tend to make clear the points which we will find necessary to consider in our opinion, run briefly thus:

On the 4th of July, 1914, there was a picnic at a place in Douglas County known as Johns Mills. To this picnic came, among others, defendant, halting a moment on his journey thither, at a place called Abadale, where he purchased some cartridges for his revolver. Shortly after defendant arrived on the picnic ground, upon some provocation not disclosed (and not pertinent to this case if disclosed), defendant got into a quarrel with a young woman, who seems to have either slapped defendant or struck him with an umbrella. Defendant in return for her blow, either slapped her or pushed her from him. This altercation with the young woman seems to have occurred some three hours before the time at which deceased was killed. At a time shortly after the altercation with the young woman, deceased met defendant and after some words, seemingly growing out of defendant's altercation with the young woman (though the

record cannot be said to be clear upon this point), defendant applied to deceased an epithet a little more vulgar and obscene than is conventional, even in cases of homicide committed by drunk men at picnics. Thereafter defendant and deceased seem to have parted without any further hostilities occurring. After this initial altercation and some little time before the homicide, deceased, it is said, went to one John Hide, a witness in the case, and made inquiry of Hide where he could obtain a weapon. Hide directed him to the coat of the witness, which was either tied to, or hanging upon a saddle, in the pocket of which there was a pair of metal knucks. Deceased seems to have gotten these knucks, at least the witness testified that shortly afterward the knucks were gone from the pocket of the coat.

Subsequent to this and apparently shortly after the noon hour, defendant and deceased met at the picnic grounds and the shooting occurred. The testimony is conflicting as to whether defendant on this occasion first accosted deceased, or deceased accosted the defendant. The testimony for the State leaves this matter in doubt; while the testimony for the defendant is that deceased came to defendant on the picnic grounds and inquired of him whether he meant what he had said to deceased in the previous encounter, above mentioned. Being advised by defendant that the latter did mean it, deceased, applying the conventional opprobrious epithet to defendant, struck at him with a pair of knucks, and instantly defendant drew his pistol and shot deceased.

Upon this phase of the case, and as to what happened at a time instantly before the shooting, the testimony of the State tends to show that defendant applied an opprobrious epithet to deceased and the latter replied, "I will be damned if I will take it," and either struck defendant upon the head, or struck at him without hitting him, and defendant instantly shot deceased. The witnesses for the State say that the shooting by defendant and the striking of, or at, de-

fendant by deceased, were simultaneous; that they could tell no difference between them; that "they were right together." Other evidence in the case on the part of the State shows that defendant partially drew his pistol from his pocket as he was entering into the last difficulty with deceased.

The defense is self-defense. Upon this phase there was some evidence to the effect that deceased, before he was shot by defendant, had, as stated above, armed himself with a pair of metal knucks, and that he struck defendant therewith, wounding him on the head and drawing blood, before defendant fired the fatal shot. Much conflict is to be found in the evidence touching whether the wound upon the defendant's head and the blood which flowed therefrom were caused by a blow from deceased, or were caused by an attack made on defendant by the mother of deceased with an umbrella shortly after the shooting.

Much testimony came in as to the metal knucks. It was shown, without contradiction, that these knucks must have been gotten by deceased from the coat pocket of the witness Hide, and that they were found after the death of the deceased in the pocket of certain trousers which had belonged to the latter. That deceased either struck, or struck at defendant with a pair of knucks, or with his fist just before, or simultaneous with, the shooting by defendant, is abundantly shown by the evidence. The sole conflict lies in the questions of (a) whether deceased used a pair of knucks in his striking; (b) whether he actually hit defendant, or not; and (c) whether at the time he struck defendant, or struck at the latter, defendant was not already engaged in drawing his pistol. In other words, the questions which are troublesome and which were before the jury, are whether deceased acted, in doing what he did, to protect himself from a threatened assault by defendant with a pistol, or whether defendant, in doing what he did, acted to protect himself from a threatened assault by deceased with metal knucks. There is evidence on both sides of these questions.

These were of course questions of fact for the jury. On them the jury has found against the defendant and in favor of the theory of the State. There is abundant evidence justifying this finding and so we need only consider in what we shall say, the alleged errors occurring upon the trial in the admission of testimony and in the giving of certain instructions which are challenged. These questions need not be set forth here, since we will sufficiently refer to them in connection with our discussion of them in the opinion.

I. It is urged that the information herein is bad, for that the learned prosecuting attorney, seemingly by a mere clerical misprision, thrice out of the four times in which the term is found in the information, wrote that the assault, shooting and striking were done of defendant's "malice *of* aforethought," instead of using the formal and time-tried expression "malice aforethought." While we are of the opinion that the unnecessary interpolation of the preposition "of" was mere non-hurtful surplusage (State v. Meyers, 99 Mo. 107), yet, since this case must on other grounds be reversed and remanded, the learned prosecuting attorney may (if he is so advised) amend the information by striking out the surplus preposition, lest the attempted innovation should ·clutter up the law by becoming a precedent, and so invite carelessness.

II. Complaint is made of the instruction given by the court on self-defense; which complaint, so far as we are able to understand its precise nature, is based upon the use by the learned trial court of the italicized words in the following clause: "If at the time he (defendant) shot he had reasonable cause to believe and did believe that it was necessary for him to shoot *and kill* to protect himself from such apprehended danger, you will acquit on the ground of self-defense."

*Necessary to Kill.*

A reference to the adjudged cases and a brief looking to the logic of the matter will conclusively show that this complaint is more specious than real. While

we have repeatedly criticised the language of this instruction as being a departure from the approved and proper form, we have not said of late at least that the giving of it constitutes reversible error. [State v. Lewis, 248 Mo. 498.] In the case last cited, a circumlocution or paraphrase is suggested in lieu of the alleged objectionable expression "that it was necessary for him to shoot *and kill* to protect himself." It is there said that it would be better to say "that it was necessary for him *to use his pistol in the way he did* to protect himself." [State v. Thomas, 78 Mo. l. c. 339; State v. Talmage, 107 Mo. l. c. 557.] Palpably, the point of defendant's objection is that the instruction as given requires that defendant believe the danger impending to be so great as that, to avert it, he must shoot *to kill* before he is allowed by law to shoot at all. In the absence of any evidence contradicting the intent to kill and in the light of the facts before us here as to the manner of the use by defendant of his pistol, that is, that defendant did with a deadly weapon shoot deceased in a vital spot and kill him, and of our holdings that a paraphrase is preferable, it is difficult to conclude that the error here complained of is a reversible one. This very point has been made many times in this court in criticism of the precise language here complained of, and we have said that it was not reversible. [State v. Gee, 85 Mo. 647; State v. Parker, 106 Mo. 217; Pattison's Ins. in Crim. Cases, sec. 693.]

In the light of our former rulings and of the reason of the thing, we are of opinion that where a homicide is actually accomplished by the intentional use of a deadly weapon upon a vital spot, defendant ought not to be heard to bottom reversible error upon the employment by the trial court of a direct expression of the result of the use of such weapon rather than of its periphrastical equivalent. A little fairer indeed, would it be to follow the form of the self-defense instruction set out in the case of State v. Thomas, 78 Mo. l. c. 339, which we commend to the courts *nisi*.

III. Defendant strenuously urges that it was error for the trial court to fail and neglect to rule upon objections made by defendant to the admission of testimony. We need not consider whether this be so or not; or whether, if the court *nisi* fail to rule, and admit testimony objected to, we should resolve the matter upon the test of the mere fact of a single failure to rule or upon the question whether the initial objection thereto was well taken. Procedural difficulties in the path of enforcing any other rule would seem to call for this latter test of harmfulness. For who could in fairness say how many failures to rule should work reversible error? For the silence of the court might relate to a merely conventional objection, or the objection made might not in fact have been heard by the court. But be this as may be, we find but one exception taken specifically to the court's failure to rule, and the initial objection made to the question asked was not such as to make a ruling necessary on the part of the court. Certainly, however, it is the duty of the trial court to rule on every objection properly and courteously made upon the trial of a case. We have twice at least, in equity cases, severely criticised this practice and have intimated that in a flagrant case it ought to constitute reversible error. [Morrison v. Turnbaugh, 192 Mo. 427; Seafield v. Bohne, 169 Mo. 1. c. 546.] But for lack of a proper preservation of the point we do not need to pass on it here.

**Failure to Rule upon Objections.**

IV. Upon the trial the State was permitted, over defendant's objection, to ask him on cross-examination whether he had not discharged his pistol at a point on the public road, and at a time some three hours before the shooting of deceased. Defendant, though he testified for himself, had not referred to the fact of shooting his pistol at this time or place. Since he was the defendant it was an improper question and the objection to it should have been sustained. [Sec. 5242, R. S. 1909; State v. Pfeifer, 267 Mo. 1. c. 30.]

**Cross-examination of Defendant.**

Likewise, in our opinion, the learned trial court should have sustained the defendant's objection to the evidence offered by the State of defendant's altercation with the Fitzgerald girl. This occurred some three hours or more before the happening of the difficulty which culminated in the shooting of deceased. Upon no theory which occurs to us, nor upon any called to our attention, can the admission of testimony of this separate and disconnected difficulty be justified.

**Disconnected Altercation.**

V. Upon the trial, against defendant's exceptions, the court instructed the jury thus:

"If you find from the evidence that defendant intentionally killed Samuel O. Narramore by shooting him with a loaded pistol and that such pistol was a deadly weapon, then the law presumes that such killing was murder in the second degree, in the absence of proof to the contrary; and it devolves upon the defendant to adduce evidence to meet or repel that presumption, unless it is met or repelled by evidence introduced by the State."

**Presumption.**

While the presumption of law mentioned in the above instruction exists (State v. Tabor, 95 Mo. l. c. 595), and in a proper case may, it is said, be invoked to eke out proof otherwise dark and lacking, this is not a proper case in which to fall back upon such a presumption. For it is a well-settled principle of law that presumptions are invoked only when evidence is lacking.

It may be that cases are to be found in which this instruction has been given, and wherein there was proof pro and con of facts from which the triers of fact could have found whether the homicide was murder in one or the other degree, or manslaughter of one degree or another, or whether it was done in self-defense. But it is clear to us that in all such cases a presumption is used in the face of proof of the fact presumed, to batter down the evidence in the case. This is not permissible and constitutes an unwarranted use of presumptions; because, as forecast, there is no room or necessity for a presumption when there is

proof for and against the very fact which is presumed. When proof comes in at the door presumptions fly out at the window, as was said substantially in a happy figure by LAMM, J., in the case of Mockowik v. Railroad, 196 Mo. 1. c. 571.

When however, an intentional killing with a deadly weapon is shown, and there is no evidence upon the side of the State of any other fact, it has been said that this presumption arises to aid the State. [State v. Minor, 193 Mo. 1. c. 612; State v. Evans, 124 Mo. 397.] The Minor case was decided by this court, In Banc, in 1905, and all of the judges concurred, except MARSHALL, J., not sitting. The homicide there was committed by means of shooting with a pistol. There were no eye-witnesses. Immediately after the shooting the accused fled. Being apprehended and put upon his deliverance, he admitted the shooting, but averred that it was accidental and not intentional. Against the defendant's averment of accident, the State lacking affirmative evidence, relied upon a presumption, and so relying the below instruction was given by the court *nisi* and it would have been held good by us upon the facts therein held in judgment if the word "intentionally" had been used therein:

" 'If the jury believe and find from the evidence in the case that the defendant shot with a pistol, and by such shooting killed William Green, the law presumes that such killing was murder in the second degree, in the absence of proof to the contrary, and in such case the burden of proof devolves upon the defendant to show to the reasonable satisfaction of the jury, from the evidence in the case, that he is guilty of a less crime than murder in the second degree, or that the homicide was excusable.' "

The only criticism of the above instruction in the case, supra, is this, to-wit: "Under the evidence in this case the court was justified in submitting that question to the jury and if the instruction numbered 5 had contained the word 'intentionally' or its equivalent before the words 'shot with a pistol,' it would

have been correct, but in the absence of the word 'intentionally,' or its equivalent, the instruction was erroneous.''

Passing by the illogical reasoning arising from the necessity of inferring in the Minor case an intentional killing from the fact of flight and then basing a presumption of law largely upon such inferred fact, we may concede for argument's sake (without again so holding), the correctness of the ruling therein. But the true facts therein were evidenced on the State's side solely by the dumb evidence of the circumstances, contradicted by the testimony of the defendant Minor only upon the single point of whether the killing was intentional or accidental.

The facts in the instant case are wholly different. All of the circumstances of the homicide here are known, and shown upon the record by the testimony of eye-witnesses. No earthly reason or necessity exists for indulging any presumption as to whether the killing was or was not murder in the second degree. The facts shown in evidence disclosed the grade of the offense. That these facts were disputed as to some vital phases by the witnesses for the State and for the defendant, does not detract from the argument. It was for the jury as the triers of fact to resolve these contradictions and when they resolved them they held inevitably that upon one side lay truth and upon the other falsehood; i. e. (not to put it so brutally), that the facts shown by the State are the veritable facts of the case. The actual facts being shown, or being by the finding of the jury made veritable, there is no place in this case for a presumption of law about the grade of the homicide. [2 Chamberlayne, Mod. Law of Ev., 1085; Erhart v. Dietrich, 118 Mo. l. c. 427; Conway v. Supreme Council, 137 Cal. l. c. 389; Mockowik v. Railroad, supra.] There is, we repeat, no doubt of the existence in law of the presumption defined in the instruction under review; but such an instruction has no place in a case wherein the facts are known from eye-witnesses. Surely, it has no place

except mayhap in a case where there is an absence of evidence as to the facts of a homicide, save and except the fact of an intentional killing by the use of a deadly weapon upon a vital spot. To use it in a case like this is to assume the absolute truth of the State's side of hotly disputed facts; then to draw from the State's side of such facts a presumption of second degree murder; add that presumption to the facts on that side and .then demand of the defendant that he rebut the presumption so unwarrantably obtained.

We are not required to overrule the case of State v. Minor, supra, but content ourselves with distinguishing it upon the facts. We leave to subsequent determination, when we shall meet the point face to face, the question whether the procedural necessity of indulging the presumption on the State's part in order to make any case at all, should override what casually seems to be a plain case of bottoming a presumption upon an *inference* (said by many respectable courts and law-writers to be synonymous with *presumption*). But be all this as may be, for the reasons stated the effect here of giving the instruction was to put upon defendant an undue burden; in effect, to beg the identical questions submitted to the jury upon the proven facts, and so compel defendant to meet by his proof both the State's proven facts and the weight of an unwarranted presumption drawn from these facts. In the light of some of the holdings of ours, it is not strange that the learned trial court fell into error. We are constrained by the reason of the thing to say that upon the facts in this case the instruction ought not to have been given.

Other alleged errors will not likely occur upon a new trial. It follows that for the errors noted, this case should be reversed and remanded for a new trial. Let this be done.