## THE STATE v. CASPER COLE, Appellant.

### Division Two, June 5, 1924.

1. **INSTRUCTION: Threats: Communicated and Uncommunicated: Apprehension: Aggressor.** An instruction telling the jury that threats made by deceased and communicated to defendant "may be considered by you as explaining the conduct and apprehension of defendant at the time of the shooting" and that "you will consider any threats made by deceased and not communicated to defendant for the purpose of explaining the conduct and demeanor of deceased at the time of the shooting," restricted the jury, in determining who was the aggressor, to a consideration of only such threats as were not communicated to the defendant, and was erroneous in that it did not authorize the jury to consider the communicated threats for the purpose of determining who was the aggressor, there being evidence that defendant was told prior to the shooting that deceased had made threats against his life.

2. ———: ———: **Palliation: Unwarranted Comment: Use of Word Murder.** An instruction telling the jury that threats do "not justify, excuse or palliate the offense of murder," provided the jury further find that at the time deceased was shot he made no threats against, no attack or assault upon, and no demonstration of violence against defendant, is an unwarranted comment upon detached portions of the evidence, and in the use of the word "murder" is peculiarly hurtful, and under the circumstances of this case there was no occasion for giving such an instruction.

3. ———: **Intention to Kill: Presumption.** An instruction which, in effect, tells the jury that a presumption that defendant intended

to kill deceased arises if he intentionally shot him in a vital part, with a deadly weapon, has no place in the case, where the facts of the shooting are described by eye-witnesses and they testify what actually occurred.

4. ———: **Argumentative.** From an instruction enumerating contingencies upon which the jury will not be at liberty to convict defendant, the clause: "You are instructed that the probability of defendant's guilt as charged in the information is not sufficient to warrant a conviction, nor is it sufficient that the greater weight or preponderance of the evidence supports the allegations of the information; nor is it sufficient that, upon the doctrine of chance, it is more probable that the defendant is guilty," etc., should be omitted, since it is argumentative in form.

Headnotes 1 to 4: Homicide: 1, 30 C. J. sec. 633; 2, 30 C. J. sec. 619; 3, 30 C. J. sec. 596; 4, 30 C. J. sec. 590. Headnote 2: Criminal Law. 16 C. J. sec. 2314.

Appeal from Butler Circuit Court.—*Hon. Almon Ing,* Judge.

REVERSED AND REMANDED.

*Jerry Mulloy* for appellant.

(1) Instruction number 5 is erroneous, in that, as to threats of deceased, made against appellant, before the fatal affray, it restricts the jury to a consideration of only such threats as were not communicated to appellant, in determining who was the aggressor in said affray. Where there is evidence tending to show an assault first made by deceased, evidence of threats, made by deceased, whether communicated to defendant or not, are admissible as bearing directly upon the important questions as to whether deceased was the aggressor, his animus toward the defendant, his purpose in the affray and his state of feeling toward the defendant. State v. Sloan, 74 Mo. 610; State v. Alexander, 66 Mo. 161; State v. Elkins, 63 Mo. 159; State v. McNally, 87 Mo. 650; State v. Downs, 91 Mo. 24; State v. Bailey, 94 Mo. 316; State v. Harrod, 102 Mo. 609; State v. Spencer, 160 Mo. 123; State v. Smith,

164 Mo. 583; State v. Gelleher, 201 Mo. 637; State v. Hale, 238 Mo. 502; State v. Birks, 199 Mo. 276. (2) ''The court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence.'' Sec. 4038, R. S. 1919. Instruction No. 6, by telling the jury that threats by the accused against the appellant would not justify, excuse, or palliate the offense of murder, is erroneous, in that it is a contravention of said statute; it invades the province of the jury; it is a comment on evidence; it isolated a portion of the evidence; and eliminated appellant's plea of self-defense. State v. Adkins, 225 S. W. 282; State v. Fish, 195 S. W. 998; State v. Dixon, 190 S. W. 294; State v. Mallock, 269 Mo. 239; State v. Rogers, 253 Mo. 412; State v. Schaffer, 253 Mo. 337; State v. Rafferty, 252 Mo. 80; State v. Mitchell, 229 Mo. 697; State v. Rutherford, 152 Mo. 124, 133; State v. Reed, 137 Mo. 139; State v. Smith, 53 Mo. 271; State v. McCanon, 51 Mo. 160. (3) Instruction numbered 7 in effect tells the jury that if they find that appellant intentionally shot and killed Epley, they must find him guilty of murder in the first degree. (a) This instruction is erroneous, in that, as to first degree murder, it ignores the elements of willfulness, deliberation, premeditation and malice. State v. McCarver, 194 Mo. 718; State v. Pacquett, 75 Mo. 330; State v. Hill, 69 Mo. 451. (b) Even though the killing was intentional, yet if it was without deliberation it would be only murder in the second degree. State v. Hudson, 59 Mo. 135; State v. Eaton, 75 Mo. 586; State v. O'Hara, 92 Mo. 59; State v. Gregory, 178 Mo. 48; State v. Robertson, 178 Mo. 496. (c) Manslaughter may be done intentionally. State v. Fletcher, 190 S. W. 315; State v. Sebastian, 215 Mo. 58; State v. Shuster, 183 S. W. 296. (d) Self-defense is an affirmative, positive, intentional act. State v. Smith, 114 Mo. 406; State v. Gilmore, 95 Mo. 564; State v. Tabor, 95 Mo. 593. (e) An erroneous instruction is not cured by others correctly given. State v. Barnes, 256 S. W. 498. (4) Instruction numbered 9, in effect, tells the jury that a probability of defendant's guilt arises from

the charge contained in the information. (a)   The information is a mere formal charge,  and no inference, probability or presumption arises from it.   State v. Jones, 225 S. W. 900; State v. Goldstein, 25 S. W. 911. (b)   The presumption of innocence attends and follows the defendant throughout the whole trial and until his guilt is established by evidence to the satisfaction of the jury beyond a reasonable doubt.   State v. Johnson, 256 S. W. 524; State v. Hollis, 225 S. W. 961.  (c)   An instruction which assumes a disputed question of fact is erroneous.   State v. Farr, 255 S. W. 1069; State v. Creed, 252 S. W. 678.

*Jesse W. Barrett,* Attorney-General, and *Robert W. Otto,* Assistant Attorney-General, for respondent.

(1)   Instruction 5 is in proper form and has been approved by this court.   State v. Hudspeth, 159 Mo. 178, 200; State v. Darling, 199 Mo. 168, 202.   (2)   Instruction 7 as to the presumption arising from the use of a deadly weapon is in proper form and has been approved by this court.   State v. Hudspeth, 159 Mo. 178, 195; State v. Schmulbach, 243 Mo. 533, 538.   (3)   Instruction 9 is unduly favorable to the appellant.

RAILEY, C.—By an information filed in the Circuit Court of Butler County, Missouri, on December 21, 1922, appellant was charged with murder in the first degree for the killing of Joseph J. Epley, in said county, on November 24, 1922.   The case was tried before a jury and, on April 14, 1923, the following verdict was returned:

"We, the jury in the above entitled cause, find the defendant guilty of murder in the second degree, and assess his punishment therefor at imprisonment in the penitentiary for a term of twenty (20) years."

Defendant, in due time, filed motions for a new trial and in arrest of judgment.   Both motions were overruled, sentence pronounced, judgment rendered, and an appeal granted defendant to this court.

State v. Cole.

The evidence in behalf of the State tended to prove the following facts: That one Joseph J. Epley, the deceased, a man near seventy years of age, sold a farm in Butler County aforesaid, to Armstrong and Lang. The latter turned over his interest to Armstrong. In June, 1922, Armstrong was in possession of said land, and had a crop, live stock and personal property thereon. During the above period, Armstrong, deceased and appellant made a deal by which the latter purchased the personal property of Armstrong, acquired one-half interest in the crop, and was to have the use of the farm as tenant of deceased, from that time during the balance of the year 1922, and the whole of 1923; that pursuant to this transaction, appellant immediately went into possession of the farm and remained there until after the death of Epley; that shortly prior to the 15th of November, 1922, Epley again became the owner of said land by foreclosure proceeding of the deed of trust thereon, and at once moved onto the farm with his family and personal property, but without the consent of appellant, and against his wishes occupied part of the buildings thereon. On November 24, 1922, the deceased went out to a meadow on said farm to do some plowing; that while deceased was in said meadow the defendant proceeded from his back porch toward deceased with a shotgun. The wife of deceased saw defendant moving as above indicated and followed him. When defendant got within about twenty feet of the deceased, he shot the latter in the shoulder with said shotgun. When shot, the deceased "gave down in his knees" and, while so doing, the defendant shot again, striking the deceased in the eye. The deceased said nothing prior to the first shot, but "hollered" after he was shot. After shooting deceased, defendant turned and left the farm. Mrs. Williams, who lived about three-quarters of a mile from the home of deceased, was informed by defendant's brother that appellant had killed deceased. She came to the farm, and found deceased lying back in the far corner of the house, in the meadow. His wife was there with

him, and she removed from deceased's pockets a watch, pocketbook and knife. Other parties appeared at the scene of the shooting. When Mr. Keel arrived at the farm, he found deceased lying on the ground where he had been shot, and there was a great deal of blood on the ground. Between the house occupied by defendant, and where he was lying after the shooting, Keel found two empty twelve-gauge shot-gun shells, a few steps from the scene of the shooting. Keel also found at the house of defendant a single-barreled, twelve-gauge shotgun, which was empty, but had been recently used. The coroner of said county held an inquest and found that deceased had been shot in the head and right eye, and that there were scattered shots along the side of the neck. The coroner gave it as his opinion that deceased died from the effect of a gunshot wound in his head.

The defendant came into the store of Charles Irby, at Hendrickson, and advised him that he had killed deceased, and was going down to give himself up to the sheriff. Appellant came to the office of J. H. Hogg, the sheriff, immediately after the killing of deceased, and informed the sheriff he had killed him with a single-barreled shotgun. He told the sheriff that he had first shot the deceased, then re-loaded and shot again. That as he shot deceased, the latter was attempting to open a gate which divided the meadow from a lot. The defendant said he did not know whether the deceased had a gun or not.

Isom G. Williams said the defendant, a few weeks before the shooting, in relating his troubles, stated that he and deceased would not both be alive.

The wife of deceased testified, that her husband had nothing in his hand when shot, and made no motion toward putting his hand in his pocket. She further testified that her husband had no gun when shot.

The testimony in behalf of defendant tended to prove that he and his wife lived on the farm owned by deceased; that about September 15, 1922, the deceased and his wife moved on said farm and occupied a small out-

house; that ill-feeling existed between defendant and deceased, occasioned by deceased claiming and taking part of the products of the farm belonging to defendant; that on November 24, 1922, the day of the shooting, the deceased was trying to open a gate, which defendant had previously locked; and from which he had removed the hinges; that defendant's wife, at this time, heard some loud talking down near the gate, and heard a shotgun report; that in a few minutes thereafter, defendant returned to his home and left the latter for the purpose of going to the place of Mr. Hunter; that about two weeks prior to the shooting, the deceased had a conversation with one Lee Duncan, relative to gaining possession of his farm and, upon being told that he could get possession of same by the payment of fifty dollars, he told Duncan he would not pay a cent, but would get it anyway; that on the day of the shooting deceased was talking rather loudly to his wife; that the latter handed him a shotgun, and he started down toward the meadow, with the statement that "Cole is looking for trouble, and I am going to plow that ground if I have to kill him before night;" that defendant could tell by the way deceased's pocket hung, that he carried a pistol therein; that a few weeks before the shooting, deceased was seen carrying a revolver; that deceased's general reputation in the community where he lived, for being a quarrelsome, turbulent man, was bad; that the wife of deceased told witness Maud Alexander that she did not see the shooting, but heard two shots fired; that deceased, when asked if defendant had moved from the farm, said he had not, but a little shotgun law would make him move; that defendant contracted for the possession of the farm with deceased on June 27, 1922, and was to have it for the years 1922-3; that defendant, under said contract, took possession of the farm; that deceased requested defendant to move on the farm at once, when said contract was made, and agreed to give him a share of the crop, half of the potatoes, the garden, etc.; that a few days after said September 15, while in the town of Hendrickson, de-

ceased informed defendant that he was going to move back on the farm and wanted defendant to give him possession; that on said September 15, 1922, deceased, with his wife, moved on to said farm, took possession of the tool shed, two stalls in the barn for his horses, and one stall for his cow; that on November 24, 1922, defendant had locked said gate with a chain and padlock and, after so doing, went to his breakfast, after which he made preparations to hunt some hogs; that upon his return at about eight o'clock, he observed the deceased trying to open said gate; that defendant walked toward deceased, and informed the latter that he did not want him to open the gate or plow the pasture; that deceased then said, "I am as game a man as you are," and reached toward his back pocket, whereupon defendant shot deceased; that he shot deceased because the latter started to shoot at him; that immediately after the first shot, deceased again ran his hand to his pocket, and defendant shot him a second time; that after shooting deceased, defendant returned to his home, and started to Hunter's place; that the wife of deceased was about forty or forty-five steps away from where the shooting occurred, and she could not have seen her husband from the position which she occupied; that after arriving at Hunter's, defendant went to Jim Fudge's mill, and from there to Poplar Bluff, where he surrendered to the sheriff. The evidence of defendant tends to show that the various threats aforesaid, made by deceased, were communicated to defendant prior to the shooting.

The wife of deceased testified that she did not on the morning of November 24, 1922, hand deceased a shotgun, nor did deceased on that day have any shotgun, nor did he own a revolver, or have one about the premises at that time; that deceased did not say he was going to plow the ground, if he had to kill defendant.

In order to avoid repetition, the instructions and rulings of the court throughout the trial, as far as necessary will be considered in the opinion.

Appellant, in his assignment of errors, presents seven propositions for our consideration. The first charges the trial court with error in failing to grant him a new trial based on newly discovered evidence. The second alleges that the court erred in overruling appellant's motion for a new trial, based on the alleged misconduct of the jury. We prefer to consider the other assignments of error first, in the order presented.

I. It is claimed, that the court erred in giving instruction numbered 5, which reads as follows:

"You are instructed that you will take into consideration the evidence as to threats, if any, made by deceased prior to the killing. If you believe that

**Threats.** any of such threats were made and were communicated to defendant, then such threats or threat may be considered by you as explaining the conduct and apprehension, if any, of defendant at the time of the shooting. You will also consider any threats you may believe were made by deceased and not communicated to defendant for the purpose of explaining the conduct and demeanor of deceased at the time of the shooting."

Appellant contends that this instruction is erroneous, because it restricts the jury to a consideration of only such threats as were not communicated to appellant, in determining who was the aggressor in said affray.

The instruction, as given, authorized the jury to consider the threats made by deceased which were communicated to defendant, "as explaining the conduct and apprehension, if any, of defendant at the time of the shooting." We are of the opinion that said instruction should likewise have told the jury that they had the right to consider said communicated threats, as they did those not communicated, for the purpose of determining who was the aggressor at the time and place of shooting. Both Ed Cole and Mollie Cole testified that they told defendant, prior to the shooting, of threats made by deceased against the life of appellant. The instruction, as given, in legal effect, limited the jury in determining whether the deceased was the aggressor at the time of

the shooting, to a consideration only, of his uncommuni-cated threats, and precluded those which were commu-nicated. The instruction, as given, was clearly erroneous in respect to above matter. [State v. Sloan, 47 Mo. 604; State v. Alexander, 66 Mo. l. c. 161; State v. McNally, 87 Mo. l. c. 650; State v. Downs, 91 Mo. l. c. 24; State v. Harrod, 102 Mo. l. c. 609; State v. Smith, 164 Mo. l. c. 582-3; State v. Birks, 199 Mo. l. c. 276.]

The law is clearly stated by HENRY, J., on this sub-ject, in State v. Alexander, 66 Mo. l. c. 161-2, where it is said: "When there is evidence tending to show an as-sault first made by deceased, evidence of threats, made by deceased, whether communicated to defendant or not, are admissible as bearing directly upon that important question, which the jury must determine before making their verdict."

The error pointed out in respect to Instruction 5, supra, was emphasized by the language used. The first part of said instruction said to the jury: "you will take into consideration the evidence as to threats, if any, made by deceased prior to the killing." The succeeding lan-guage of the instruction, however, applied the maxim "*expressio unius est exclusio alterius*," and plainly gave the jury to understand, that in determining whether the deceased was the aggressor, his uncommunicated threats only should be taken into consideration.

We are cited by the State, in support of said in-struction, to the rulings of BURGESS, J., in State v. Huds-peth, 159 Mo. l. c. 200, and in State v. Darling, 199 Mo. l. c. 185-6. The real question now before us was not considered or discussed in either of said cases. In the Hudspeth Case, at page 208, Judge BURGESS, in consider-ing the State's instruction, simply said they appeared to be free from substantial objection, with the exception of No. 22. In the Darling Case, at page 202, Judge BURGESS, in disposing of an instruction like the one at bar, simply said: "A final contention is that the court erred in giving instruction numbered eleven, in respect to threats made by the deceased and not communicated to the de-

fendant. The instruction seems to us to be in substantial accord with the repeated decisions of this court and the well-settled doctrine upon the subject." It is evident that Judge BURGESS was simply considering the question, as to whether uncommunicated threats of deceased could be considered by the jury in determining whether he was the aggressor at the time of the shooting. It is manifest, that the rulings in the two cases above cited, cannot stand the test of judicial criticism as applied to the instruction before us, and should not be followed.

The above instruction was objected to by appellant, and complained of in the motion for a new trial. It related to a material issue presented by the State, and it was the duty of the court to give a correct instruction covering communicated threats made by deceased, as well as those uncommunicated, in order that the jury might properly determine who was the aggressor at the time and place of shooting. [Sec. 4025, R. S. 1919; State v. Burrell, 252 S. W. 1. c. 711; State v. Parker, 256 S. W. (Mo.) 1. c. 1042-3.]

II. The correctness of instruction numbered 6 is challenged. It reads as follows:

"The court instructs the jury that although you may believe from the evidence that, prior to the time he was shot, deceased had made threats against the defendant, yet this fact alone does not justify, excuse, or palliate the offense of murder, provided the jury shall further believe from the evidence that at the time deceased was shot he made no threats against the defendant, and made no attack or assault upon defendant, and made no demonstration of violence against defendant."

*Unwarranted Comment.*

This instruction appears to have been taken from the opinion in State v. Rider, 95 Mo. 1. c. 482. BRACE, J., in justifying the giving of this instruction, on page 484, said: "The jury were simply told in this instruction that the homicide could not be justified by the previous threats

of the deceased alone, unaccompanied by any hostile demonstrations at the time.''

The cases of State v. Foran, 255 Mo. l. c. 222, and State v. Fletcher, 190 S. W. (Mo.) l. c. 322, seem to have followed the ruling in State v. Rider, supra, without giving any special consideration to the subject.

Instruction 6, supra, describes the killing of deceased as murder instead of designating it as a homicide. The evidence tends to show that defendant knew deceased had been carrying a pistol before the shooting. He knew that deceased was attempting to take forcible possession of the farm which appellant had previously leased. He was advised as to threats made against his life by deceased. It was the province of the jury to consider all the threats made by deceased in determining whether he was the aggressor at the time and place of shooting. It was likewise the province of the jury to consider the threats communicated to defendant in determining whether he was justified by reason of same, the surrounding appearances, and all other facts as they existed, in shooting deceased in self-defense. Said Instruction 6, designated the shooting of deceased as murder, directed the attention of the jury to detached portions of the evidence, and stated therein that said threats did not justify the defendant in murdering deceased, instead of leaving the jury to consider all of said threats, in connection with the other facts, in passing upon the merits of the case. There was no occasion for giving such an instruction. In our opinion, it was an unwarranted comment on the evidence, to the disadvantage of defendant, in respect to detached portions of the testimony, and is condemned alike by our recent rulings in both civil and criminal cases. [State v. Shields, 246 S. W. (Mo.) 936; Littig v. U. A. Heating Co., 237 S. W. (Mo.) l. c. 785; State v. Edelen, 288 Mo. l. c. 172-3; Jones v. Ry. Co., 287 Mo. l. c. 77-8, and cases cited; Burton v. Holman, 288 Mo. 70, 231 S. W. 630; State v. Adkins, 284 Mo. l. c. 688 and cases cited; State v. Shaffer, 253 Mo. l. c. 337;

State v. Rutherford, 152 Mo. 124; State v. Smith, 53 Mo. 267; State v. McCanon, 51 Mo. l. c. 161-2.]

III.  The court is charged with error in giving instruction numbered 7, which reads as follows:

"In order to convict the defendant of murder in the first degree, you must believe from the evidence that the defendant shot Joseph J. Epley intending
<span style="font-variant:small-caps">Intention to Kill.</span> to kill him.  In this connection, however, you are instructed that in the absence of qualifying circumstances and facts, a person is presumed to have intended the natural, ordinary and probable results of his acts.  Wherefore, if you believe from the evidence that the defendant, Casper Cole, intentionally shot Joseph J. Epley in a vital part, with a deadly weapon, to-wit, a shot gun, from which death ensued, you will find that he intended to kill, unless the facts and circumstances given in evidence show to the contrary."

It is claimed by the State that the above instruction is approved in the following cases:  State v. Grant, 152 Mo. l. c. 64; State v. Hudspeth, 159 Mo. l. c. 195; State v. Schmulbach, 243 Mo. l. c. 538.  The most casual reading of the instructions considered in the cases just cited will clearly indicate that they are wholly unlike said Instruction 7, do not convey the same idea, and deal with entirely different questions.  Aside from said Instruction 7 containing an erroneous statement of abstract propositions of law, it has been repeatedly condemned in cases of this character.  The wife of deceased, and defendant, both claim to have been present at the time and place of shooting, and each undertook to detail what occurred at that time.  In view of the direct testimony of the above parties, there was no room for such a presumption, even if the instruction had been couched in proper language.  [State v. Swearengin, 269 Mo. 177, l. c. 188; State v. Wansong, 271 Mo. l. c. 57; State v. Burns, 278 Mo. l. c. 446-7; State v. Davis, 217 S. W. (Mo.) l. c. 90.]

In State v. Swearengin, at page 188, FARIS, J., in discussing the validity of such an instruction, said:

"There is, we repeat, no doubt of the existence in law of the presumption defined in the instruction under review; but such an instruction has no place in a case wherein the facts are known from eye-witnesses. Surely, it has no place except mayhap in a case where there is an absence of evidence as to the facts of a homicide, save and except the fact of an intentional killing by the use of a deadly weapon upon a vital spot."

In State v. Wansong, 271 Mo. l. c. 57, in considering an instruction relating to presumptions, we said: "Of course, if there is countervailing proof raising an issuable fact as to the intent, e. g., that the act was accidental or that it was in self-defense and only the necessary modicum of force was used or intended, or other fact negativing intent, then such issuable fact ought to be submitted to the jury, and no presumption should be entertained about the matter, for in such case there is not room for presumptions."

In State v. Burns, 278 Mo. l. c. 446-7, WHITE, J., in considering the question, said: "This instruction regarding presumption of guilt in trial for murder in the second degree is never permissible when the evidence shows what the facts are as it did in this case. 'Presumptions are invoked only when evidence is lacking.' "

(a)    Query? If every man charged with crime is presumed in law to be innocent, until shown to be guilty, and this presumption continues throughout the trial, how can such presumption be reconciled with those mentioned in this class of instructions?

IV.    Appellant complains of instruction numbered 9, as given. It was manifestly intended by the court to enumerate certain contingencies in which the jury were not at liberty to convict defendant. The following portion of it is objectionable, and should be omitted on a re-trial of the cause, to-wit:

"The jury are instructed that the probability of defendant's guilt as charged in the information is not sufficient to warrant a conviction, nor is it sufficient that the

greater weight or preponderance of the evidence supports the allegations of the information; nor is it sufficient that, upon the doctrine of chance, it is more probable that the defendant is guilty."

That portion of said instruction above quoted is argumentative in form, and is obnoxious to the same criticism leveled against Instruction 6, discussed under Proposition II, supra. The remainder of said instruction properly declares the law of the case.

V. Two other assignments of error are made, which relate to newly-discovered evidence, and alleged misconduct upon the part of the jury. As the matters referred to in said assignments are not likely to arise upon a retrial of the case, we do not deem it necessary to consider same.

On account of the errors heretofore pointed out, the cause is reversed and remanded for a new trial. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur; *White, J.,* in Paragraphs II, III, and the result.