STATE v. ROBERT LEE LITTLEJOHN, Appellant.—No. 40461.—204 S. W. (2d) 750.

Division One, October 13, 1947.

*I. Joel Wilson* for appellant.

*J. E. Taylor*, Attorney General, and *Robert L. Hyder*, Assistant Attorney General, for respondent.

1054

 VAN OSDOL, C.—Defendant was convicted of murder in the second degree and his punishment assessed at ten years imprisonment in the penitentiary. Herein upon appeal defendant assigns errors of the trial court in refusing to direct a verdict of acquittal, and in failing to give an instruction on manslaughter. Errors are also assigned in refusing instructions proffered by defendant.

The homicide occurred near midnight, November 11-12, 1944, in a "gangway" or areaway off Kennerly Avenue in the City of St: Louis. Defendant shot deceased with a 22-caliber "Boston Bulldog" revolving pistol. The bullet passed through deceased's left lung, and wounded the pulmonary artery at a point one inch from the heart.

About two weeks prior to the homicide, according to defendant's testimony, defendant had loaned deceased a dollar to pay for some drinks, the deceased promising to repay defendant when they next met. On the night of the homicide defendant chanced to hail a taxicab in which deceased was a passenger, and, while in the taxicab, defendant and deceased entered into a discussion concerning the loan. The taxicab driver testified the conversation was "kind of an argument like," although a third passenger testified, "it was just a jovial conversation." When the taxicab stopped on Kennerly Avenue, near where the deceased lived, the deceased said, "I haven't got any money." The taxicab driver testified, "I say, 'You haven't got any money?' He said, 'No sir, but I'll go back and get it,' and he . . . looked through his pockets to be sure, and after he looked through his pockets, he went on back to see about the money. . . . I got back in my cab and sat down. In the meantime this other fellow (defendant), he decided to go back and see what he was doing out there so long, and when he went back, why, I could hear him. I got—I thought I would go back and see what was happening. . . ." The witness heard them "wrangling back there . . . as I was coming on back I could hear, and I was trying to see, I couldn't see, and then I heard the gun fired and I turned around."

Defendant testified, "I figure when he (deceased) gets out there— I am expecting him to pay me too; that's why I went back there (into the gangway near deceased's home.) . . . When I walks back almost where he was at, he . . . said a curse word—what did I come back there for. I said, 'Well, I come back here because I thought you might give me my money.' . . . and he rushed on me and hit me. Understand I turned around and started back. When I turned my back to him, he knocked me down. : . . When

I gets up I seen him pull something out of his pocket; it looked like a knife. The blade was all I could see. It wasn't so awfully long; I guess about as long as your finger; and he rushed at me with the knife, and I ran . . . and he rushed me and come mighty near catching me. I just pulled the gun out and shot back. . . . It wasn't my intention really to kill him . . . I am trying to stop the man; let me get out of that gangway."

A witness living in a house fronting on Kennerly Avenue and located just east of the gangway testified that she saw the three men enter the gangway. She recognized the voice of deceased who was arguing, and later heard the fatal shot. Another witness who was present in her home "in the rear" off Kennerly Avenue heard two men arguing, and saw a "flash from the gun." After the homicide an officer searched deceased's body, finding a closed ■■■ pocket knife in the right-hand trouser pocket.

■ The State's evidence showed a homicide by the use of a deadly weapon, a pistol. The defendant testified he really had no intention to kill; however, in intentionally using a pistol, a weapon likely to produce death, firing at or in the direction of deceased, defendant was presumed to intend the consequences which would naturally and probably follow such intentional use of such a weapon. State v. Hart, 309 Mo. 77, 274 S. W. 385. See also State v. Gaters, Mo. Sup., 39 S. W. 2d 548. The trial court did not err in refusing to direct a verdict of acquittal.

■ We are of the opinion, however, the trial court erred in failing to submit to the jury the issue of defendant's guilt of the crime of manslaughter. Where the record shows personal violence—a battery —inflicted upon the slayer by the deceased at the time of the homicide, the general rule is that a manslaughter instruction is called for; and this is true though the evidence consists of the testimony of the defendant alone. Personal violence is the standard exacted by the law whereby a jury may infer the heat of passion which reduces the grade of a homicide from murder to manslaughter. State v. Creighton, 330 Mo. 1176, 52 S. W. 2d 556, and cases therein cited; State v. Starr, 38 Mo. 270 at page 277. Proof of an initial assault and battery upon defendant by deceased is substantial evidence of the lawful provocation entitling the defendant to an instruction on manslaughter, because it measures up to the standard exacted by the law and in point of fact warrants an inference that heat of passion was engendered thereby. State v. Creighton, supra.

In the case of State v. Carroll, 333 Mo. 558, 62 S. W. 2d 863, cited by the State, the evidence did not show the deceased inflicted actual personal violence—a battery—upon the defendant. In that case no instruction on manslaughter was required. In the case at bar the defendant (alone) testified of an unprovoked assault and battery upon him at a time immediately or closely preceding the homi-

cide. (No such time intervened between the battery and the homicide as would raise the question whether sufficient cooling time had elapsed to make it legally conclusive there was no heat of passion. See State v. Robinson, 353 Mo. 934, 185 S. W. 2d 636.)

It is contended by the State that defendant's own testimony negatived heat of passion, and that no question of manslaughter was in the case. We are reminded by the State that defendant testified, "It wasn't my intention really to kill him . . . I am trying to stop the man; let me get out of that gangway." In the case of State v. Creighton, supra, this court considered a like contention. There a defendant had made an extra-judicial statement to the police that he had shot to avoid arrest (this was introduced into evidence by the State), and later, on the witness stand, defendant testified he shot in self-defense. The State contended that, since defendant had stated he shot to avoid arrest and later testified he killed in self-defense, there was no evidence of heat of passion and therefore no question of manslaughter in the case, although the defendant testified deceased committed a battery upon him. In holding that a manslaughter instruction should have been given, the court pointed out that defendant had the right to avail himself of such favorable inferences as any part of the record afforded. The evidence of violence to the person makes a jury question as to whether the killing was done in hot blood and the jury may believe the testimony of a battery, but may disbelieve he acted in self-defense.

While defendant did not ask an instruction on manslaughter, he assigned the failure of the trial court to give the instruction as error in the motion for a new trial. The court was required to instruct on that issue whether requested or not. Section 4070 R. S. 1939, Mo. R. S. A. sec. 4070; State v. Burrell, 298 Mo. 672, 252 S. W. 709. We hold a manslaughter instruction should have been given. State v. Creighton, supra; State v. Stallings, 326 Mo. 1037, 33 S. W. 2d 914.; State v. Bidstrup, 237 Mo. 273, 140 S. W. 904.

▮ The trial court submitted the issue of self-defense. On that issue defendant ▮ proffered (and the trial court refused) an instruction containing language informing the jury that a defendant "will not be required under the law to nicely gauge the amount of force to be used to repel such assault." The instruction given by the trial court at the instance of the State on the issue of self-defense did not contain the advice to the jury that "no one is justified in using more force than is necessary to get rid of an assailant," as was contained in the instruction given at the State's instance in the case of State v. Hopkins, 278 Mo. 388, 213 S. W. 126 (and in other cases cited by defendant); and, in the Hopkins case, the prosecuting witness had a "billy" and the weapon used by defendant was a stone. See again State v. Robinson, supra, 353 Mo. at pages 942-944, 185 S. W. 2d at pages 641-642. The State's instruction in the instant

case did not submit the denial of defendant's right of self-defense on the ground of more force than necessary. Such a question was not submitted in the case; the instruction assumed the use of the pistol "in the way defendant did" was not unnecessary force if an act of self-defense was found to be reasonably necessary; and there was no need for a cautionary statement relating to the amount of force. State v. Robinson, supra.

Defendant requested instructions on the issue of self-defense to the effect that if the jury found from the evidence that the deceased was armed with a knife and was, at the time of the shooting, making an assault upon the defendant with the knife exposed to defendant's view, "the defendant would be justified in assuming that the deceased intended to use said knife in a manner to kill him or to do him some great bodily injury." The defendant contends that, since the trial court instructed that a defendant intends the natural and probable consequences of his act when he makes an intentional assault with a deadly weapon at some vital part, the defendant (on the issue of self-defense) is entitled to an instruction declaring like presumptive effect to deceased's assault upon defendant.

Even aside from the question whether the proffered instructions assumed the knife to be a deadly weapon, we do not follow defendant's argument. An actual intention to kill, on the part of the defendant, is essential to his conviction of the crime of murder. But since mental intentions are not tangible things and often must be inferred from the circumstances, it has been considered proper in such cases for the court, in developing the law of the case to the jury, to disclose to them the force and effect of a *presumption* which may be drawn from the defendant's intentional use of a deadly weapon at some vital part of the body. See and examine State v. Malone, 327 Mo. 1217, 39 S. W. 2d 786; State v. Cole, 304 Mo. 105, 263 S. W. 207; State v. Swearengin, 269 Mo. 177, 190 S. W. 268.

On the other hand, when it comes to a defendant's defense of self-defense, an *actual* intention on the part of the *assailant* to kill the defendant or to do him some great bodily harm is not essential. The defendant is entitled to act on reasonable appearances in the circumstances. If he has reasonable cause to apprehend, and does apprehend, that the assailant has the design to kill him or do him some great personal injury; and that there is immediate danger the design will then and there be accomplished; and that it is necessary for him to act in self-defense to protect himself from such apprehended danger—in these circumstances he may do so. But *his* belief in these facts must be *actual,* not merely presumptive. State v. Huett, 340 Mo. 934, 104 S. W. 2d 252; State v. Singleton, Mo. Sup., 77 S. W. 2d 80.

It is the jury's province to determine from the facts and circumstances in evidence whether the defendant was justified in acting.

1058

The defendant's proffered instructions, which singled out and hypothesized the fact of the deceased's assault with a knife and additionally advised the jury that the defendant was entitled to assume a design or intent therefrom to kill or to do great bodily injury, were, in our opinion, not only unnecessary upon the issue of self-defense, but were further subject to the criticism they would permit the jury to justify the defendant in acting upon an assumption, whereas the act is not justified except upon belief.

The judgment should be reversed, and the cause remanded. It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.