**STATE of Missouri, Respondent,**

**v.**

**U. D. EARVIN, Appellant.**

**No. 57782.**

Supreme Court of Missouri, Division No. 1.

June 10, 1974.

John C. Danforth, Atty. Gen., Karen Iverson, Asst. Atty. Gen., Jefferson City, for respondent.

Karl F. Lang, Kevin M. O'Keefe, St. Louis, for appellant.

WELBORN, Commissioner.

Appeal from judgment and sentence of life imprisonment entered on jury verdict finding U. D. Earvin guilty of murder in the first degree.

The appellant Earvin and the victim, Rufus Mack, were employees of the Krey Packing Company in St. Louis. Following work on Friday, April 10, 1970, the two had gone separately to a tavern, the Red Coach Inn, located near their place of employment. Mack and Earvin made a wager on a bowling game in which Earvin was participating and a dispute arose between them over who won the bet. Earvin claimed he was the winner, but did not get the money. The men left the tavern separately. Earvin went to his house in East St. Louis where he changed clothes and put a pistol in the rear pocket of his trousers. He returned to the Red Coach Inn and inquired, "Where's that rat?" A patron told Earvin: "The man is gone home, getting ready to go to the ball game." One patron testified at Earvin's trial that Earvin said he was "going down there and shoot that rat in his ass."

Earvin and Mack did go to the ball game at Busch Stadium and sat in the bleachers. At around the seventh inning of the game, Earvin saw Mack waving to him and the two went to a restroom. The argument over the wager resumed and Earvin drew his pistol and shot Mack twice, causing his death. Earvin was arrested before he left the restroom.

At his trial Earvin testified that, in the restroom argument, he saw that Mack was getting angry and that he backed into a stall in the restroom and Mack said, "Nigger, you better not come out of there." Earvin said he knew that Mack carried a "long blade knife" and when "he reached back to go into his pocket for a gun or something * * * that's when the incident happened."

In the cross-examination of Earvin on his trial, the assistant circuit attorney

asked Earvin whether he had a prior altercation with Mack. Earvin replied negatively and the prosecutor then asked him whether or not Mack had been involved in a dispute over a wager some three weeks prior to the shooting in which Earvin threatened Silas Weaver with a meat cleaver. Earvin denied that such incident had occurred.

Later, the prosecutor asked that Earvin be recalled, stating that his information that Mack had been involved in the prior incident was erroneous, but that on that occasion Earvin had become angry over the loss of a bowling bet and threatened his antagonist, not Mack, with a meat cleaver. When defense counsel objected to such line of inquiry, the prosecutor stated:

"* * * That's material to this and for this reason this man is claiming that he had this bet and he calmed down and forgot it and he claimed self-defense. I can show by prior act of a similar nature that this man is prone to, when he loses a bet, to be vicious and go after the person he loses to. It substantiates the truth of the other incident and that's the reason for this coming in. * * * This negates the incident of self-defense and it substantiates the truth of the State's position.

* * *

"* * * The reason it's not collateral is that the State's position was that this man is in effect, although not in front of the jury, he's in fact what we call a hard loser and he's so irate about this that he went across the river and got a gun, came back looking for the man, stalked him down, found him, shot him and killed him. He claimed self-defense. We can show that on a previous occasion he did a similar thing over the same type of a thing, losing a bet. * * * I want to ask a question under what I now understand the facts to be, to lay the foundation for impeachment. It is not collateral because it tends to prove or negate his defense that this was a self-defense situation."

The court overruled the objection and Earvin was cross-examined about an incident at the Mona Lisa Lounge at an unspecified date. Earvin acknowledged being at the lounge, along with Silas Weaver and Bob Bennett and that he and Weaver said something about who won a two-dollar bet, but said there was no argument and he did not threaten anyone with a meat cleaver.

Following Earvin's testimony, defense offered witnesses who testified that Earvin's reputation for being a peaceable person was good.

In its rebuttal, the state called as a witness Robert Bennett, an employee of Krey. Over objection, the prosecutor elicited from Bennett testimony about an incident at the Mona Lisa Lounge five or six months prior to the shooting of Mack. Bennett testified that he was there when a dispute arose between Earvin and Silas Weaver over a two-dollar bowling bet. Bennett testified that he went outside with the two as they were arguing and Earvin said he wanted his money and went to his car and came out with "some sort of a cleaver thing like." Bennett said he told Earvin "it wasn't no sense in doing this" and Earvin took the cleaver back to his car. Bennett was vague as to whether Earvin waved the cleaver threateningly but he did say he grabbed Earvin and talked to him.

On this appeal, the sole assignment of error is that the admission of Bennett's rebuttal testimony was error because the testimony "was an attempt to improperly prejudice the jury against defendant by presenting evidence of other crimes with which the defendant was not charged and to impeach the defendant on a collateral matter first raised by the state on cross-examination."

■ The trial court erred in admitting the state's rebuttal testimony. The evidence was not admissible to impeach appellant as a witness because it related to a collateral matter and the defendant's testimo-

ny in response to the questions on the subject, propounded on his cross-examination, was binding on the state. State v. Hamilton, 310 S.W.2d 906, 909 [7–9] (Mo. 1958).

■ The rebuttal testimony was not admissible to counter the defendant's evidence of his good reputation for peaceful behavior. The state could have countered defendant's evidence on this score by evidence of his bad reputation for peaceful behavior, but not by proof of specific acts of misbehavior. State v. Phillips, 233 Mo. 299, 135 S.W. 4, 5 (1911).

■ The respondent contends here that the evidence was properly admissible as bearing on motive, intent and malice. The state's brief on this issue is of little assistance. The state cites three cases in which the court has enumerated the exceptions to the general rule which prohibits the production of evidence of another offense by the defendant on trial. The state has cited State v. Spinks, 344 Mo. 105, 125 S.W.2d 60 (1939); State v. Reese, 364 Mo. 1221, 274 S.W.2d 304 (Banc 1954); and State v. Hyde, 234 Mo. 200, 136 S.W. 316 (1911). In all three cases the evidence in question was held to have been erroneously admitted.

State v. Reese, supra, does indicate the rather strict rule which has been applied in this state regarding evidence of other offenses. In that case the defendant was charged with murder in a robbery. Admission of evidence of defendant's participation in a robbery two hours later was held prejudicially erroneous. The state's theory in that case was that the evidence of the other offense was admissible on the theory of proof of identity, one of the well-established exceptions to the rule of exclusion. In that case, the court stated the requirement that the evidence offered as an exception must be clearly shown to have logical relevancy to proof of the offense with which the defendant stands charged, "a judicial question to be resolved in the light of the consideration that the inevitable

tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors." 274 S.W.2d 307.

In several homicide cases evidence of prior difficulties between the defendant and a person other than the deceased has been held inadmissible. In State v. Maddox, 339 Mo. 840, 98 S.W.2d 535 (1936), the defendant in a homicide case claimed self-defense. The court held reversible error the admission of evidence offered by the state in rebuttal that defendant was the agressor in an altercation between the defendant and a person other than the deceased which occurred a short time prior to the killing. No specific reference to the intent exception was made. The court quoted from State v. Palmer, 281 Mo. 525, 220 S.W. 680, 682 (1920), where the court quoted with approval the rule:

"Evidence of a previous difficulty between defendant and a third person with which deceased had no connection and which was not a part of the transaction in which the deceased was killed is not admissible."

See also: State v. Swearengin, 269 Mo. 177, 190 S.W. 268 (1916); State v. Swain, 68 Mo. 605 (1878).

In this case, the prior difficulty between defendant and Weaver had no bearing on the motive for defendant's action against Mack. On the question of intent and malice, the essence of the state's position would be that the exception here makes the evidence admissible to show a lack of good faith on the part of the defendant in his self-defense posture, the killing of Mack having been admitted. See II Wigmore on Evidence, § 302, p. 196 (3rd ed. 1940).

The logical relevance of the evidence for such purpose is too strained and remote. At best the evidence of the prior incident showed, as the state urged at the trial, that appellant was a "poor loser." Both that incident and the difficulty which ended with the death of Mack arose over a wager. Insofar as the appellant's state of mind at

the time of the shooting of Mack is concerned, i. e., whether he had genuine cause to believe that his life was endangered by Mack, the prior incident is not of probative value. No aggressive action, comparable with that here taken, according to the state's theory, by appellant was shown in the prior incident. Certainly appellant's action in the prior incident did not show that he habitually settled his wagering disputes by killing his opponent. The exclusionary rule laid down in State v. Maddox, State v. Swearengin and State v. Swain, supra, should have been applied here. The admission of testimony as to the prior difficulty was error which requires reversal of this conviction and a new trial.

Reversed and remanded.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.